Mario BIAGGI and Estate of Marie Biaggi, Deceased, Richard Biaggi, Executor, Petitioner–Appellant,

v.

## COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent–Appellee.

### Docket No. 00–4163.

United States Court of Appeals, Second Circuit.

April 20, 2001.

Richard M. Biaggi, Esq., Biaggi & Biaggi, New York, NY, for appellant.

A. Wray Muoio; Paula M. Junghans, Acting Assistant Attorney General, and Kenneth L. Greene, on the brief, Washington, DC, for appellee.

Present WALKER, Chief Judge, OAKES and POOLER, Circuit Judges.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the U.S. Tax Court be and it hereby is AFFIRMED.

Petitioner-appellant Mario Biaggi appeals from a May 3, 2000 judgment of the United States Tax Court (Halpern, *J.*) holding, in relevant part, that Biaggi was liable for additions to tax on account of fraud under sections 6653(b)(1) and (2) of the Internal Revenue Code. The Tax Court also ruled that the fair market value of the Wedtech shares was $11.20. On appeal, Biaggi argues that the Tax Court abused its discretion in quashing a pretrial subpoena *duces tecum* and that the Tax Court clearly erred in finding that the fair market value of the Wedtech stock during the relevant period was $11.20.

Biaggi was a member of Congress and Wedtech was a manufacturing company located in New York City. In 1987, Biaggi was convicted after a five-month jury trial of, *inter alia*, participating and conspiring to participate in the affairs of Wedtech through a pattern of racketeering in violation of 18 U.S.C. § 1962(c) and (d); extortion, bribery, and receipt of an unlawful gratuity in violation of 18 U.S.C. § 1951, 201(c) and (g) in connection with his demand and receipt of five percent of Wedtech's stock; extortion, bribery, and mail fraud in violation of 18 U.S.C. §§ 1951, 201(c), and 1341 in connection with his demand for money in exchange for influencing public officials to grant Wedtech a lease; filing false income tax returns in violation of 26 U.S.C. § 7206(i) for failing to report income derived from acquisition of Wedtech stock; and perjury in violation of 18 U.S.C. § 1623 in connection with falsely testifying before a grand jury. *See United States v. Biaggi*, 823 F.Supp. 1151, 1153 (S.D.N.Y.1993), *aff'd*, 48 F.3d 1213 (2d Cir.1994) (table decision). Appellant's convictions were affirmed by this court. *See United States v. Biaggi*, 909 F.2d 662 (2d Cir.1990) ("*Biaggi I*").

The Wedtech shares at issue were not delivered to appellant, but rather to appellant's son, Richard Biaggi, as appellant's nominee. Richard Biaggi was convicted of filing false income tax returns by overstating his income to include the Wedtech

shares in 1983 and reporting a gain on the sale of some of the Wedtech shares in 1985. *See Biaggi I*, 909 F.2d at 674–75, 681. Appellant Biaggi did not report on his income tax returns (1) the receipt of the Wedtech shares in 1983 as gross income or (2) the income from the sale of some of the shares in 1985. *See id.* at 681.

On May 22, 1997, the Commissioner of the Internal Revenue Service ("Commissioner") issued a notice of deficiency and additions to appellant in connection with the Wedtech stocks. Specifically, the Commissioner increased appellant's gross income for 1983 by $1,260,000 to reflect the receipt of 112,500 shares of Wedtech stock issued in his son's name, and increased appellant's gross income for 1985 by $107,000 to reflect gain from the sale of 25,000 Wedtech shares.

Three months prior to his trial in the Tax Court, appellant requested that the Commissioner produce copies of all reports of the IRS agents, the Special Agents, and Appeals Officer Russo. After the Commissioner objected to these requests, appellant filed a motion to compel the Commissioner to produce these documents. The Tax Court granted the motion. Pursuant to that order, the Commissioner produced the reports of the IRS agents and Appeals Officer Russo. The Commissioner, however, did not produce the Special Agents' reports on the grounds that the documents were not in the IRS's possession or control and because they were grand jury matters, which could not be disclosed pursuant to Fed.R.Crim.Proc. 6(e).

Appellant then caused a subpoena *duces tecum* to be issued to the Commissioner calling for him to appear at trial and to bring with him "the entire file relative to investigation of the [taxpayer's] income tax returns, 1983 and 1985 including files and transcripts of the special agents and the Appeals Bureau." In connection with the subpoena, appellant submitted a check in the amount of $15.00 for the Commissioner's witness fee.

On June 15, 1998, the Commissioner moved to quash the subpoena on the following grounds: (1) the special agents' reports contained information relating to the grand jury proceeding and that release of these records would violate Fed. R.Crim.P. 6(e); (2) that appellant's failure to tender the proper witness fee of $40 made the subpoena unenforceable; and (3) the production of Biaggi's "entire case file" was unreasonable and oppressive. On that same day, the tax court granted the motion to quash the subpoena without hearing or opinion.

■ This court reviews the Tax Court's quashing of a subpoena for abuse of discretion. *See United States v. Sanders*, 211 F.3d 711, 720 (2d Cir.), *cert. denied*, 531 U.S. 1015, 121 S.Ct. 574, 148 L.Ed.2d 491 (2000).

Fed.R.Crim.Proc. 6(e)(2) establishes a general rule of secrecy regarding grand jury proceedings. *See* Fed.R.Crim.Proc. 6(e). Biaggi argues that because he is not seeking information relating to matters before the grand jury, the subpoena was improperly quashed. This argument is unpersuasive. By his own characterization, Biaggi is seeking information quintessentially related to the inner workings of the grand jury—specifically, whether or not the government sought to indict Biaggi for tax evasion, and if so, whether the grand jury declined to indict him on this charge.

■ In order to obtain disclosure of grand jury proceedings, a petition for disclosure "shall be filed in the district where the grand jury convened," in this case the Southern District of New York. Fed. R.Crim.Proc. 6(e)(3)(D). Since Biaggi effectively made this request before the Tax

Court, which was not the district where the grand jury was convened, the Tax Court lacked jurisdiction over the request and the Tax Court could have properly quashed the subpoena on this basis alone. Accordingly, we find that the Tax Court did not abuse its discretion in quashing the subpoena.

■ Biaggi argues that the Tax Court improperly valued the Wedtech stock at $11.20 per share, a factual finding, *see Silverman v. Comm'r of Internal Revenue,* 538 F.2d 927, 931 (2d Cir.1976). This court reviews the tax court's findings of fact for clear error. *See Estate of Gloeck-ner v. Comm'r of Internal Revenue,* 152 F.3d 208, 212 (2d Cir.1998).

■ In making its determination, the Tax Court examined the IRS's reasoning behind the valuation of the Wedtech stock. The IRS took into account the following: (1) Wedtech's initial public offering ("IPO") share price of $16.00 in August 1983; (2) the fact that there was a two-year restriction on the transferability of Biaggi's shares; (3) the sale of Wedtech stock, similarly restricted, for $12.50 in May 1983, as described in the prospectus accompanying the IPO; (4) the repurchase of those shares sold for $12.50 in May 1983, by Wedtech for $14.80 in August 1983, as described in the prospectus accompanying the IPO.

This court has previously rejected the idea of using the IPO price, without adjustment, to determine the fair market value of the Wedtech shares in question. *See Biaggi I,* 909 F.2d at 681. Rather, "[a]rm's length sales of the stock to be valued are, of course, the best evidence of value." *See Silverman,* 538 F.2d at 931 n. 7. Because the IRS took into account the IPO price, the two-year restriction on the sale of the stock, and the two arms-length stock purchases close in time to Biaggi's acquisition of the stock, the Tax Court's

adoption of the IRS's valuation was not clear error. Moreover, the valuation of $11.20 per share was less than the IPO price and the price paid in both arms-length transactions.

Biaggi argues that book value of the stock is the "proper and accepted value" for stock valuation. As of January 1, 1983, the book value of the Wedtech stock was 32 cents per share. This argument must fail because this court has held that book value is "not ordinarily an accurate reflection" of the fair market value of a stock. *See In re Roblin Indus., Inc.,* 78 F.3d 30, 36 (2d Cir.1996).

We have considered appellant's remaining arguments and find them to be without merit. Accordingly, we AFFIRM the judgment of the Tax Court.