T.C. Memo. 2003-146


UNITED STATES TAX COURT


LOUIS E. PEYTON, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 16468-98.            Filed May 22, 2003.


Louis E. Peyton, pro se.

<u>Veena Luthra</u>, for respondent.


MEMORANDUM OPINION


COHEN, <u>Judge</u>:  Respondent determined the following deficiencies and penalties with respect to petitioner's Federal income taxes for 1990 and 1991:

|  | | Penalty |
| Year | Deficiency | I.R.C. Sec. 6663 |
| 1990 | $29,538 | $22,154 |
| 1991 | 32,493 | 24,370 |

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. Increased deficiencies and penalties were alleged in respondent's answer. After concessions, the issues for decision are:

(1) Whether, and to what extent, petitioner received unreported income from marijuana sales during 1990 and 1991 and from certain construction activities during 1991;

(2) whether petitioner is liable for self-employment tax for these years; and

(3) whether there exist underpayments due to fraud for 1990 and 1991 such that (a) petitioner is liable for civil fraud penalties pursuant to section 6663 and (b) respondent's proposed deficiency assessments are not barred by the statute of limitations.

## Background

For 1990 and for 1991, petitioner and his wife filed a joint Form 1040, U.S. Individual Income Tax Return. The Forms 1040 listed the occupation of petitioner as "construction worker". Each return reported wages earned by petitioner's wife. The 1990

return also included income from an attached Schedule C, Profit or Loss From Business, for petitioner's construction activities. No such Schedule C was included or construction income shown for 1991.

In January 1997, petitioner was indicted on multiple counts in the United States District Court for the Eastern District of Virginia. After trial, petitioner was found guilty on one count of conspiracy to distribute marijuana and cocaine and on four counts of filing false tax returns for 1990, 1991, 1992, and 1993, in violation of section 7206(1). The indictment named various persons as conspirators, including Stephen C. Hatcher (Hatcher). With respect to the counts concerning section 7206(1), the indictment charged that petitioner:

> did wilfully make and subscribe a U.S. Individual Income Tax Return, Form 1040, for the calendar year 1990 [or 1991, etc.] which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which said U.S. Individual Income Tax Return, Form 1040, he did not believe to be true and correct as to every material matter in that the said U.S. Individual Income Tax Return, Form 1040, failed to disclose that he engaged in the operation of a business activity from which he derived gross receipts or sales and incurred deductions, whereas, as he then and there well knew and believed, he was required by law and regulation to disclose the operation of this business activity, the gross receipts or sales he derived therefrom, and the deductions he incurred.
>
> (In violation of Title 26, United States Code, Section 7206(1))

Judgment was entered against petitioner on July 8, 1997, and petitioner was sentenced to imprisonment for a term of 151 months on the conspiracy count and for terms of 36 months for each section 7206(1) count, all terms to run concurrently and to be followed by supervised release.

On September 24, 1998, respondent sent to petitioner the statutory notice of deficiency described above. The deficiencies were based in large part upon respondent's determination that petitioner received unreported income of $85,000 from marijuana sales in 1990 and in 1991. Among other adjustments, respondent also determined that petitioner had unreported income for 1991 of $9,171 from M.J. Lord. On October 8, 1998, a petition was filed with this Court disputing the full amount of the deficiencies and penalties. At that time, petitioner was incarcerated in Pennsylvania. The petition further asserted indigence, averred that respondent bore the burden of proof "as to newly enacted statute and T.C. R.142(b)", alleged the bar of the statute of limitations, and set forth erroneous and nonsensical references to various provisions of the U.S. Constitution.

Respondent answered the petition and additionally specified facts in support of the fraud allegations. The answer also asserted a claim for increased deficiencies of $28,050 and $29,313 for 1990 and 1991, respectively, and corresponding increases in penalties of $21,037 for 1990 and $21,984.50 for

1991. The answer explained that respondent "erroneously calculated the profit per pound of marijuana at $200.00, rather than $400.00 per pound", with the result that the unreported income from marijuana sales should be $170,000 for each year.

In due course, the case was set for trial at trial sessions commencing February 14, 2000; January 8, 2001; January 14, 2002; and November 18, 2002. The case was consecutively continued on the first two occasions by motions from petitioner. On the latter two occasions, motions to continue were filed by respondent. Each motion was based on petitioner's incarceration. In respondent's motion to continue the case from the November 18, 2002, session, it was represented that petitioner's "expected release date is April 24, 2008." None of the motions indicated any attempt by either party to secure petitioner's presence at trial of this matter. None of the motions reflected any efforts by the parties to preserve evidence for trial, although there was some indication of attempts to compromise petitioner's liability based on his claimed indigence. In view of the unreasonableness of deferring trial until 2008 or later with the probable loss of evidence necessary for a determination on the merits, respondent's motion to continue from the November 18, 2002, session was denied.

The case was called for trial in Richmond, Virginia, on November 18, 2002. Neither petitioner nor any representative for

him appeared, and no request to secure his appearance by writ of habeas corpus or otherwise had been made. The parties had not entered into a stipulation, although they had exchanged correspondence concerning a stipulation. Respondent introduced into evidence various documents, including copies of the indictment and judgment in the criminal case, of petitioner's tax returns for 1990 and 1991, and of checks payable to petitioner. Respondent also called as a witness a special agent of the Internal Revenue Service (IRS) who had attended petitioner's criminal trial. The special agent recounted aspects of the testimony given at the criminal trial, particularly that of alleged coconspirator Hatcher, and explained how respondent had calculated the unreported income at issue in the present proceeding.

Upon the conclusion of the proceedings, the Court issued an order directing petitioner to show cause why the case should not be decided on the record made at trial.

Petitioner filed a response to the order to show cause and a motion to reopen the record. These papers, and items attached thereto, generally attacked the testimony given at the criminal trial, quarreled with respondent's computation of the unreported income, and asserted petitioner's indigence and inability to pay the amounts sought by the IRS. The response to the order to show cause also included the following statement:

It has been over twelve years since this alleged underpayment occurred.  The Petitioner has no documentation at all with regard to these years.  As far as witnesses are concerned, I have had no contact with any of the individuals who could have testified at trial. * * *

Consistent with the above representation, none of the five items attached to the motion to reopen the record constituted documentation or records germane to any transaction purportedly underlying respondent's determinations.  Four of the documents consisted of copies of correspondence sent by petitioner to respondent and related primarily to negotiation of a stipulation that was never received by the Court and to an unsuccessful attempt to compromise the case.  The remaining item merely summarized petitioner's contentions in the face of various of respondent's allegations.

Respondent objected to the motion to reopen the record, citing rule 408 of the Federal Rules of Evidence and additionally protesting that petitioner's documents contained arguments rather than evidence.  Petitioner's motion to reopen the record was denied, the order to show cause was made absolute, and respondent was directed to file with the Court proposed findings of fact and a memorandum of law.  Respondent filed the requested materials, setting forth in detail respondent's position and also making certain concessions.  In particular, respondent asserted that petitioner received unreported income from marijuana sales of $160,000 for each year in issue, rather than $170,000 as asserted

in the answer.  The change was based on respondent's decision to rely on an amount from the lower end of a range of values purportedly supported by the testimony given at petitioner's criminal trial.

Petitioner filed a response to respondent's proposed findings and memorandum.  In this document, petitioner again attacked his criminal conviction and the testimony given at the criminal trial and largely repeated or augmented many of the contentions made in previous filings.  Additionally, in response to allegations by respondent that petitioner deposited cash into his personal bank account of $21,000 in 1990 and $24,000 in 1991, petitioner admitted cash deposits were made but claimed, without any documentary support, that the funds represented loans from Hatcher.

## Discussion

### I.  Unreported Income

The Internal Revenue Code imposes a Federal tax on the taxable income of every individual.  Sec. 1.  Section 61(a) defines gross income for purposes of calculating taxable income as "all income from whatever source derived".  This broad definition includes income obtained from illegal sources.  James v. United States, 366 U.S. 213, 218 (1961); sec. 1.61-14(a), Income Tax Regs.  Respondent has determined that petitioner

received unreported income from marijuana sales and from construction activities.

As a general rule, the taxpayer bears the burden of proving error in the Commissioner's determinations. Rule 142(a). Although section 7491 may shift the burden to the Commissioner in certain circumstances, the section is applicable only to court proceedings that arise in connection with examinations commencing after July 22, 1998. Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727. It is apparent from the record in this case that the examination commenced prior to July 22, 1998, and, therefore, section 7491 has no application.

Courts have recognized a limited exception to the general rule where the notice of deficiency determines that the taxpayer failed to report income, particularly income derived from illegal activities. Llorente v. Commissioner, 649 F.2d 152, 156 (2d Cir. 1981), affg. in part and revg. in part 74 T.C. 260 (1980); Weimerskirch v. Commissioner, 596 F.2d 358, 360-362 (9th Cir. 1979), revg. 67 T.C. 672 (1977); Petzoldt v. Commissioner, 92 T.C. 661, 687-688 (1989). In such circumstances, respondent must come forward with evidence establishing a minimal foundation, which may consist of evidence linking the taxpayer with an income-producing activity. Weimerskirch v. Commissioner, supra at 360-361; Petzoldt v. Commissioner, supra at 689.

Here, respondent has come forward with the indictment and judgment from petitioner's criminal trial sufficiently linking petitioner to illegal income from sales of marijuana. Additionally, respondent has introduced documentary evidence, primarily checks payable to petitioner, in support of the unreported construction income received from M.J. Lord. Thus, as to the amounts in the notice of deficiency (other than those adjustments conceded by respondent), petitioner bears the burden of showing error in the determinations of income from both marijuana distribution and construction operations. Petitioner has not done so. The record contains only petitioner's uncorroborated assertions to the contrary, which in essence are a collateral attack on his criminal conviction. We therefore sustain respondent's determination of $85,000 in unreported income from marijuana sales for 1990 and for 1991 and $9,171 in unreported construction income from M.J. Lord in 1991.

However, with respect to the increased deficiencies asserted by respondent subsequent to issuance of the statutory notice, respondent bears the burden of proof. Rule 142(a). The record falls short of carrying this burden. The only support offered by respondent for the $160,000 amount from marijuana sales is the testimony of the special agent as to what was said by a single witness, Hatcher, at petitioner's criminal trial. The absence of the criminal trial transcript deprives us of any ability to

review the testimony, to compare statements made on direct versus cross-examination, or to consider potential conflicts with testimony of other witnesses (to which petitioner repeatedly alludes).  We decline to uphold the increased deficiencies.

II.  Self-Employment Tax

Section 1401 imposes a tax "on the self-employment income of every individual".  Self-employment income is defined generally as "net earnings from self-employment", which in turn means "the gross income derived by an individual from any trade or business carried on by such individual, less the deductions allowable by this subtitle which are attributable to such trade or business".  Sec. 1402(a) and (b).  "Trade or business" as used in this context has been construed to encompass not only legal but also illegal business activities.  See Petzoldt v. Commissioner, supra at 668-669; Sundel v. Commissioner, T.C. Memo. 1998-78, affd. without published opinion 201 F.3d 428 (1st Cir. 1999).

Petitioner bears the burden of proving error in respondent's notice of deficiency in this regard, Rule 142(a), and petitioner has offered no evidence or argument pertaining to the self-employment tax.  Hence, to the extent that we have sustained respondent's determinations of unreported income, we likewise sustain the imposition of corresponding self-employment tax thereon.

III.  Fraud Penalties

Section 6663(a) provides for the imposition of a penalty in "an amount equal to 75 percent of the portion of the underpayment which is attributable to fraud."  In addition, section 6663(b) specifies that, if any portion of the underpayment is attributable to fraud, the entire underpayment is treated as attributable thereto, except and to the extent that the taxpayer establishes some part is not due to fraud.

Respondent bears the burden of proving the applicability of the civil fraud penalty by clear and convincing evidence.  Sec. 7454(a); Rule 142(b).  To sustain this burden, respondent must establish by this level of proof both (1) that there was an underpayment of tax for the taxable year in issue and (2) that at least some portion of such underpayment was due to fraud.  DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Petzoldt v. Commissioner, supra at 699.

A.  Underpayments of Tax

An underpayment will exist in a scenario such as that presented by the case at bar where unreported gross receipts are not exceeded by costs of goods sold and deductible expenses.  In establishing the requisite underpayment, the Commissioner may not simply rely on the taxpayer's failure to prove error in the deficiency determination.  DiLeo v. Commissioner, supra at 873; Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Otsuki v.

Commissioner, 53 T.C. 96, 106 (1969).  However, upon clear proof of unreported receipts, the burden of coming forward with offsetting costs or expenses shifts to the taxpayer.  Siravo v. United States, 377 F.2d 469, 473-474 (1st Cir. 1967); Elwert v. United States, 231 F.2d 928, 933 (9th Cir. 1956); United States v. Bender, 218 F.2d 869, 871-872 (7th Cir. 1955); United States v. Stayback, 212 F.2d 313, 317 (3d Cir. 1954).  In addition, section 280E disallows deductions and credits (but not costs of goods sold) with respect to the sale of controlled substances.  See S. Rept. 97-494, at 309 (1982).

1.  Receipts

The record contains substantial evidence to support the existence of unreported receipts from marijuana sales.  Petitioner was convicted, under the criminal standard of proof beyond a reasonable doubt, of conspiracy to possess and distribute marijuana.  Petitioner has admitted in various papers filed with this Court that one of the witnesses at the criminal trial testified that petitioner sold marijuana to her.  Petitioner was convicted under section 7206(1), beyond a reasonable doubt, for failure to disclose that during the years in issue he "engaged in the operation of a business activity from which he derived gross receipts or sales and incurred deductions".  Supra p. 3.  The derivation of gross receipts was thus an explicit part of the charge upon which petitioner was

found guilty.  While a conviction under section 7206(1) establishes neither intent to evade tax nor the existence of an underpayment, since neither is an element of the crime, the indictment and judgment here are nonetheless clear and convincing evidence that petitioner received unreported receipts from the marijuana operations.  See Wright v. Commissioner, 84 T.C. 636, 643 (1985); Goodwin v. Commissioner, 73 T.C. 215, 229 (1979), overruled on another issue Wright v. Commissioner, supra.

Respondent has also introduced into evidence copies of checks written by Mederic J. Lord payable to, and endorsed by, petitioner.  These checks total $6,171.04, and several have notations that allude to "siding".  Additionally, respondent introduced a copy of a document handwritten by petitioner referencing certain of the foregoing checks and also acknowledging receipt of $3,000 in cash.  This document is supported by copies of bank slips showing a "cash out" transaction from an account of M.J. Lord.  We conclude that respondent has adduced clear proof of receipts of unreported construction income from M.J. Lord in 1991.

2.  Underpayment

As previously explained, the above unreported gross receipts will translate into an underpayment only if not exceeded by costs of goods sold and deductible expenses.  We thus turn to the extent to which petitioner has carried his burden of coming

forward with such offsets. On the issue of the marijuana sales, the sole information in the record pertaining to costs of goods sold is the testimony of Hatcher, indicating purchases of the drugs for $1,000 to $1,100 per pound. Respondent used the higher value in calculating the claimed underpayments, and petitioner has offered nothing to suggest any further allowance.

Concerning the payments from M.J. Lord, petitioner contends that the amounts were solely for materials and that the job was done "out of kindness, and not for profit." Elsewhere he claims that he did not report the payments because the proceeds went to Raintree Contracting, an entity allegedly owned by Rick Guevarra, with whom petitioner worked on the M.J. Lord project. Once again, however, these statements are nothing more than unsworn and uncorroborated assertions, not evidence showing costs or expenses.

Hence, as to both the marijuana sales and the construction payments, respondent has carried the burden of establishing underpayments by clear and convincing evidence.

B. Fraudulent Intent

The second prong of the fraud test requires respondent to show that a portion of the underpayment is attributable to fraud. Fraud for this purpose is defined as intentional wrongdoing on the part of the taxpayer, with the specific purpose of avoiding a tax believed to be owed. Stoltzfus v. United States, 398 F.2d

1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Powell v. Granquist, 252 F.2d 56, 60 (9th Cir. 1958).  Stated differently, imposition of the civil fraud penalty is appropriate upon a showing that the taxpayer intended to evade taxes believed to be owing by conduct designed to conceal, mislead, or otherwise prevent the collection of taxes.  DiLeo v. Commissioner, 96 T.C. at 874.

The existence of fraud is a question of fact to be resolved upon consideration of the entire record.  DiLeo v. Commissioner, supra at 874; Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed.  Recklitis v. Commissioner, 91 T.C. 874, 909-910 (1988); Beaver v. Commissioner, 55 T.C. 85, 92 (1970).  However, because direct proof of a taxpayer's intent is seldom available, fraud may be established by circumstantial evidence.  Spies v. United States, 317 U.S. 492, 499-500 (1943); DiLeo v. Commissioner, supra at 874.  In this connection, courts have developed a nonexclusive list of circumstantial indicia, or "badges", of fraud that will support a finding of fraudulent intent.

Among the badges of fraud that can be distilled from caselaw are the following:  (1) Understatement of income; (2) maintenance of inadequate records; (3) failure to file tax returns;

(4) implausible or inconsistent explanations of behavior;
(5) concealment of income or assets; (6) failure to cooperate
with tax authorities; (7) engaging in illegal activities;
(8) dealing in cash; (9) failure to make estimated tax payments;
and (10) filing false documents.  Spies v. United States, supra
at 499-500; Douge v. Commissioner, 899 F.2d 164, 168 (2d Cir.
1990); Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir.
1986), affg. T.C. Memo. 1984-601; Recklitis v. Commissioner,
supra at 910.  In addition, a conviction pursuant to section
7206(1), while not operating collaterally to estop a taxpayer
from denying fraudulent intent, is a fact to be considered and
may give rise to an inference of intent to evade.  Wright v.
Commissioner, supra at 643-644; see also Biaggi v. Commissioner,
T.C. Memo. 2000-48, affd. 8 Fed. Appx. 66 (2d Cir. 2001); Wilson
v. Commissioner, T.C. Memo. 1994-454; Avery v. Commissioner, T.C.
Memo. 1993-344.

Applying these considerations to this case, we conclude that
petitioner fraudulently intended to underpay tax for each of the
years in issue.  The record demonstrates that petitioner
understated his income, maintained inadequate records, engaged in
illegal activities, and dealt in cash.  Moreover, the convictions
under section 7206(1) are highly probative.  The logical
inference to be drawn from such circumstances is that petitioner
structured his affairs with a purpose of avoiding his Federal tax

obligations. Accordingly, we conclude that at least a portion of the underpayment for each year is due to fraud. Because petitioner has failed to submit credible evidence showing that some specific part is not due to fraud, we hold that petitioner is liable for the section 6663 civil fraud penalties. See sec. 6663(b).

IV. Statute of Limitations

As a general rule, section 6501 provides that any tax must be assessed within 3 years of the date on which the pertinent tax return was filed. However, an exception exists in the case of a "false or fraudulent return", under which exception tax may be assessed "at any time." Sec. 6501(c)(1). Respondent bears the burden of proving fraud in this context. Sec. 7454(a); Rule 142(b). Because respondent has done so here for the reasons explained above, assessment of petitioner's 1990 and 1991 tax liabilities is not barred by the statute of limitations.

To reflect concessions made and the foregoing,

Decision will be entered

under Rule 155.