FILED
United States Court of Appeals
Tenth Circuit

December 18, 2015

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

NEIL FEINBERG; ANDREA E.
FEINBERG; KELLIE MCDONALD,

      Petitioners,

v.

COMMISSIONER OF INTERNAL
REVENUE,

      Respondent.

No. 15-1333

---

**Petition for Writ of Mandamus to the
United States Tax Court
(T.C. Nos. 10083-13, 10084-13)**

---

James D. Thorburn of The Law Office of James D. Thorburn, LLC, Greenwood
Village, CO (Richard A. Walker of The Law Office of Richard A. Walker, P.C.,
Longmont, CO, with him on the petition) for Petitioners.

Patrick J. Urda, Attorney, Appellate Section, Tax Division (Caroline D. Ciraolo,
Acting Assistant Attorney General, Tax Division, and Gilbert S. Rothenberg and
Richard Farber, Attorneys, Appellate Section, Tax Division, with him on the
response) of the United States Department of Justice, Washington, D.C., for
Respondent.

---

Before **GORSUCH**, **HOLMES**, and **MORITZ**, Circuit Judges.

---

**GORSUCH**, Circuit Judge.

---

This case owes its genesis to the mixed messages the federal government is sending these days about the distribution of marijuana. The Feinbergs and Ms. McDonald run Total Health Concepts, or THC, a not-so-subtly-named Colorado marijuana dispensary. They run the business with the blessing of state authorities but in defiance of federal criminal law. *See* 21 U.S.C. § 841. Even so, officials at the Department of Justice have now twice instructed field prosecutors that they should generally decline to enforce Congress's statutory command when states like Colorado license operations like THC. At the same time and just across 10th Street in Washington, D.C., officials at the IRS refuse to recognize business expense deductions claimed by companies like THC on the ground that their conduct violates federal criminal drug laws. *See* 26 U.S.C. § 280E. So it is that today prosecutors will almost always overlook federal marijuana distribution crimes in Colorado but the tax man never will.

Our petitioners are busy fighting the IRS's policy. After the agency disallowed their business expense deductions and sent them a large bill, the Feinbergs and Ms. McDonald challenged that ruling in tax court. Among other things, they argued that the agency lacked authority to determine whether THC trafficked in an unlawful substance and, as a result, they suggested that their deductions should have been allowed like those of any other business. As the litigation progressed, though, the IRS issued discovery requests asking the petitioners about the nature of their business — no doubt seeking proof that they

are indeed trafficking in marijuana, just as the agency alleged.  The Feinbergs and Ms. McDonald resisted these requests, asserting that their Fifth Amendment privilege against self-incrimination relieved them of the duty to respond.

It's here where the parties' fight took an especially curious turn.  The IRS responded to the petitioners' invocation of the Fifth Amendment by filing with the tax court a motion to compel production of the discovery it sought.  Why the agency bothered isn't exactly clear.  In tax court, after all, it's the petitioners who carry the burden of showing the IRS erred in denying their deductions — and by invoking the privilege and refusing to produce the materials that might support their deductions the petitioners no doubt made their task just that much harder.  *See* Tax Ct. R. 142(a)(1).  And harder still because in civil matters an invocation of the Fifth Amendment may sometimes lawfully result in an inference that what you refuse to produce isn't favorable to your cause.  *See, e.g.*, *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976).

Still, the IRS chose to pursue a motion to compel.  And in support of its motion the agency advanced this line of reasoning.  Yes, of course, the IRS said, it thinks THC's deductions are impermissible precisely because they arise from activity proscribed by federal criminal statutes.  Yes, the Fifth Amendment normally shields individuals from having to admit to criminal activity.  But, the IRS argued, because DOJ's memoranda generally instruct federal prosecutors not to prosecute cases like this one the petitioners should be forced to divulge the

requested information anyway. So it is the government simultaneously urged the court to take seriously its claim that the petitioners are violating federal criminal law and to discount the possibility that it would enforce federal criminal law.

Ultimately, the tax court sided with the IRS and ordered the petitioners to produce the discovery the agency demanded — and it is this ruling the Feinbergs and Ms. McDonald now ask us to overturn. Because the tax court proceedings are still ongoing and no final order exists that might afford this court jurisdiction in the normal course, the petitioners seek a writ of mandamus. But, of course, courts of appeals only rarely intervene in ongoing trial court proceedings, and winning a writ of mandamus poses a special challenge. To secure a writ, the petitioners must show that no other adequate means exist to secure the relief they seek. They must also show a clear and indisputable entitlement to that relief. And even if they can satisfy these two requirements, the petitioners still must convince this court that exercising its discretion to intervene in an ongoing trial court proceeding is "appropriate" in the interests of justice. *See Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380-81 (2004); *Kerr v. U.S. Dist. Court*, 426 U.S. 394, 403 (1976); *United States v. Copar Pumice Co.*, 714 F.3d 1197, 1210 (10th Cir. 2013).[1]

---

[1] At times our cases have suggested that, when a petitioner seeks a writ of mandamus to vindicate a claim of privilege in response to an adverse discovery ruling, this court will apply a two-prong test before considering the merits of the petition — asking first whether "(1) disclosure of the allegedly privileged or

When it comes to establishing a clear and indisputable entitlement to relief, you might wonder if the petitioners are indeed able to bear the burden the law imposes on them. Of course it's true, as the IRS argues, that to invoke the Fifth Amendment you must "face some authentic danger of self-incrimination." *United States v. Rivas-Macias*, 537 F.3d 1271, 1277 (10th Cir. 2008) (internal quotation marks omitted). And it's true, as the IRS stresses, that two consecutive Deputy Attorneys General have issued memoranda encouraging federal prosecutors to decline prosecutions of state-regulated marijuana dispensaries in most circumstances.[2] But in our constitutional order it's Congress that passes the laws, Congress that saw fit to enact 21 U.S.C. § 841, and Congress that in § 841 made the distribution of marijuana a federal crime. And, frankly, it's not clear whether informal agency memoranda guiding the exercise of prosecutorial discretion by field prosecutors may lawfully go quite so far in displacing Congress's policy directives as these memoranda seek to do. There's always the possibility, too,

---

confidential information renders impossible any meaningful appellate review of the claim of privilege or confidentiality; and (2) the disclosure involves questions of substantial importance to the administration of justice." *Barclaysamerican Corp. v. Kane*, 746 F.2d 653, 654-55 (10th Cir. 1984) (internal quotation marks omitted). The parties before us debate whether this test merely restates the traditional test for mandamus relief we've outlined in the text or whether it imposes a more onerous burden on the petitioner. Who's right, though, proves immaterial in light of our assessment that petitioners in this case fail even under the traditional mandamus standard.

[2] *See* Memorandum from David W. Ogden, Deputy Att'y Gen., U.S. Dep't of Justice to Selected U.S. Att'ys (Oct. 19, 2009), *revised by* Memorandum from James M. Cole, Deputy Att'y Gen., U.S. Dep't of Justice (Aug. 29, 2013).

that the next (or even the current) Deputy Attorney General could displace these memoranda at anytime — by way of illustration look no further than DOJ's (still) evolving views on corporate waivers of the attorney-client privilege expressed in so many memoranda by so many Deputy Attorneys General over so many years.[3]

In light of questions and possibilities like these, you might be forgiven for wondering whether, memos or no memos, any admission by the petitioners about their involvement in the marijuana trade still involves an "authentic danger of self-incrimination." Maybe especially given the fact that the government's defense in this case is wholly premised on the claim that the petitioners are, in fact, violating federal criminal law. And given the fact that counsel for the government in this appeal candidly acknowledged that neither the existence nor the language of the DOJ memoranda can assure the petitioners that they are now, or will continue to be, safe from prosecution. And given the fact that this court has long explained that, once a witness establishes that "the answers requested would tend to incriminate [him]" under the law of the land, the Fifth Amendment may be properly invoked without regard to anyone's "speculat[ion] [about]

_____

[3] *See* Memorandum from Eric H. Holder, Jr., Deputy Att'y Gen., U.S. Dep't of Justice to All Component Heads & U.S. Att'ys (June 16, 1999), *revised by* Memorandum from Larry D. Thompson, Deputy Att'y Gen., U.S. Dep't of Justice (Jan. 20, 2003), *revised by* Memorandum from Robert D. McCallum, Jr., Acting Deputy Att'y Gen., U.S. Dep't of Justice (Oct. 21, 2005), *revised by* Memorandum from Paul J. McNulty, Deputy Att'y Gen., U.S. Dep't of Justice (Dec. 12, 2006), *revised by* Memorandum from Mark Filip, Deputy Att'y Gen., U.S. Dep't of Justice (Aug. 28, 2008), *revised by* Memorandum from Sally Q. Yates, Deputy Att'y Gen., U.S. Dep't of Justice (Sept. 9, 2015).

whether the witness will in fact be prosecuted." *United States v. Jones*, 703 F.2d 473, 478 (10th Cir. 1983).

But even if their Fifth Amendment objection bears merit, the petitioners still face a problem. As we've seen, a writ of mandamus isn't available when an appeal in the normal course would suffice to supply any necessary remedy. And in *Mid-America's Process Service v. Ellison*, 767 F.2d 684 (10th Cir. 1985), this court expressly held that any error in a district court's order compelling production of civil discovery that the petitioners believed protected by the Fifth Amendment could be satisfactorily redressed in an appeal after final judgment. *Id.* at 685-86. A holding that would seem to cover the very situation we now face.

Admittedly, the government unearthed *Mid-America's Process* only after briefing in this appeal finished, citing the case for the first time in a supplemental letter to the court. But the petitioners have now had a chance to consider and reply to the government's submission concerning *Mid-America's Process*. And, in our judgment, they have identified no satisfactory way to distinguish the decision. The petitioners do argue that their case involves the Fifth Amendment rights of natural persons, while *Mid-America's Process* involved a corporation's claim to a Fifth Amendment privilege against self-incrimination. And, they note, the Supreme Court has cast doubt on the viability of corporate invocations of the privilege. *See Braswell v. United States*, 487 U.S. 99, 116 (1988). But while not

without some surface appeal, we don't see how on more careful examination this distinction will do.  For *Mid-America's Process* expressly looked past the corporate form of the claimant in that case, took account of the individual petitioners' underlying privilege claims, and held that an appeal after final judgment would suffice to remedy any individual injury as well.  *See* 767 F.2d at 685-86 & n.1.[4]

Besides, even if *Mid-America's Process* didn't control this case (it does) the petitioners still offer us no persuasive reason for thinking an appeal after final judgment would fail to remedy any wrong they might suffer.  Suppose the petitioners are right and the tax court's order compelling production violates their Fifth Amendment rights.  If they defy the tax court's order and that court issues an improper monetary or other sanction, this court would seem well able to undo the sanction after final judgment.  By contrast, if the petitioners choose to comply with the discovery order under protest and the materials they produce are unlawfully used against them at trial, this court would still seem to enjoy ample

---

[4]  Despite the government's urging, we do not think the disposition of this appeal is controlled by *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009).  *Mohawk* involved not a mandamus petition raising the Fifth Amendment privilege but an argument that a discovery order infringing upon the attorney-client privilege was an immediately appealable collateral order under the *Cohen* doctrine.  *Id.* at 103.  What's more, in dismissing the appeal, the Court in *Mohawk* relied on the fact that the appellant had at least three remaining options for challenging the discovery order:  interlocutory appeal, writ of mandamus, or post-judgment appeal.  *Id.* at 110-11.  In contrast and given that the tax court denied the petitioners leave to file an interlocutory appeal, an adverse decision as to this petition would leave the petitioners with none but the final option.

authority to offer a remedy, maybe even in the form of a new trial without resort to the materials in question.

Of course there are nuances here, but even they seem like they can be fairly addressed later. For example, if the petitioners stand on their privilege we would face the difficulty of separating out a permissible adverse inference (sometimes employable, as we've seen, in civil cases even when the Fifth Amendment is validly invoked) from an impermissible sanction. But no one suggests that task is beyond us after final judgment. Similarly, if the petitioners choose to produce the discovery under compulsion we might have to confront the question whether any error by the tax court in ordering production was harmless and so beyond our power to remedy after final judgment. But that sort of inquiry seems built into the mandamus standard too. *See, e.g.*, *Petersen v. Douglas Cty. Bank & Trust Co.*, 940 F.2d 1389, 1392 (10th Cir. 1991). Neither is it clear that an erroneous order compelling production in this civil case would yield an unremediable negative impact for the petitioners in a later criminal proceeding. For should they elect, under threat of sanction, to comply with the tax court's order — and should it turn out that order was entered in error — the petitioners might later move to suppress any of the evidence they produced on the ground that the production was made involuntarily — a point even the government in this appeal does not dispute. *See, e.g.*, *Minnesota v. Murphy*, 465 U.S. 420, 425, 434 (1984); *Lefkowitz v. Cunningham*, 431 U.S. 801, 805 (1977).

In the end, then, the petitioners fail to offer a convincing reason to think that without an immediate remedy they will face an irreparable injury. Maybe we're missing something. Maybe a future party will show us what it is we're missing. But the petitioners have not done that much here. And that by itself supplies an independent reason, beyond even our controlling precedent, to withhold the extraordinary remedy of mandamus in this case.

The petition is denied.