**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 3, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

ALPENGLOW BOTANICALS, LLC, a
Colorado Limited Liability Company;
CHARLES WILLIAMS; JUSTIN
WILLIAMS,

      Plaintiffs - Appellants,

v.

UNITED STATES OF AMERICA,

      Defendant - Appellee.

No. 17-1223

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CV-00258-RM-CBS)**
_____

James D. Thorburn (Richard Walker with him on the briefs), Thorburn Walker LLC,
Greenwood Village, Colorado, for Plaintiffs - Appellants.

Patrick J. Urda, Attorney, Tax Division (Gilbert S. Rothenberg and Michael J. Haungs,
Attorneys, Tax Division, and Counsel Robert C. Troyer, United States Attorney, with
him on the brief), Department of Justice, Washington, D.C., for Defendant - Appellee.
_____

Before **HARTZ**, **MURPHY**, and **McHUGH**, Circuit Judges.
_____

**McHUGH**, Circuit Judge.
_____

Alpenglow Botanicals, LLC ("Alpenglow") sued the Internal Revenue Service ("IRS") for a tax refund, alleging the IRS exceeded its statutory and constitutional authority by denying Alpenglow's business tax deductions under 26 U.S.C. § 280E. The district court dismissed Alpenglow's suit under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted, and denied Alpenglow's subsequent motion under Federal Rule of Civil Procedure 59(e) to reconsider the judgment. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I.     BACKGROUND

Although twenty-eight states and Washington, D.C. have legalized medical or recreational marijuana use, the federal government classifies marijuana as a "controlled substance" under schedule I of the Controlled Substances Act ("CSA"). *Green Sol. Retail, Inc. v. United States*, 855 F.3d 1111, 1113 (10th Cir. 2017); *see* 21 U.S.C. § 812(c), Schedule I(c)(10); 21 C.F.R. § 1308.11(d)(23). The CSA makes it unlawful to knowingly or intentionally "manufacture, distribute, or dispense . . . a controlled substance." 21 U.S.C. § 841(a)(1). Under former President Obama, the Justice Department had declined to enforce § 841(a)(1) against marijuana businesses acting in accordance with state law,[1] but the IRS has shown no similar inclination to

---

[1] This policy encouraging federal prosecutors not to prosecute these cases was implemented through memoranda of the prior Attorneys General. *See, e.g.*, Memorandum from David W. Ogden, Deputy Att'y Gen., U.S. Dep't of Justice for Selected U.S. Att'ys (Oct. 19, 2009), *revised by* Memorandum from James M. Cole, Deputy Att'y Gen., U.S. Dep't of Justice for all U.S. Att'ys (Aug. 29, 2013). The current Attorney General has since rescinded this policy. Memorandum from Jefferson B. Sessions, Att'y Gen., U.S. Dep't of Justice for all U.S. Att'ys (Jan. 4, 2018).

"overlook federal marijuana distribution crimes." *Feinberg v. Comm'r*, 808 F.3d 813, 814 (10th Cir. 2015). Instead, the IRS consistently denies business deductions to state-sanctioned marijuana dispensaries under 26 U.S.C. § 280E,[2] which prohibits any "deduction or credit" for any business that "consists of trafficking in controlled substances (within the meaning of . . . the Controlled Substances Act)." *E.g.*, *id.*; *Olive v. Comm'r*, 792 F.3d 1146, 1147 (9th Cir. 2015).

This appeal is the product of the clash between these state and federal policies. Alpenglow is a medical marijuana business owned and operated by Charles Williams and Justin Williams, doing business legally in Colorado. *See Alpenglow Botanicals, LLC v. United States (Alpenglow I)*, No. 16-cv-00258-RM-CBS, 2016 WL 7856477, at *2 (D. Colo. 2016) (unpublished). After an audit of Alpenglow's 2010, 2011, and 2012 tax returns, however, the IRS issued a *Notice of Deficiency* concluding that Alpenglow had "committed the crime of trafficking in a controlled substance in violation of the CSA" and denying a variety of Alpenglow's claimed business deductions under § 280E. *Id.* Alpenglow's income and resultant tax liability were increased based on the denial of these deductions. Because Alpenglow is a "pass

---

[2] 26 U.S.C. § 280E states in full:

> No deduction or credit shall be allowed for any amount paid or incurred during the taxable year in carrying on any trade or business if such trade or business (or the activities which comprise such trade or business) consists of trafficking in controlled substances (within the meaning of schedule I and II of the Controlled Substances Act) which is prohibited by Federal law or the law of any State in which such trade or business is conducted.

through" entity, the increased tax liability was passed on to Charles Williams and Justin Williams. As a result, Charles Williams owed the IRS an additional $24,133 in taxes and Justin Williams owed an additional $28,961. The two men paid the increased tax liability under protest and filed for a refund, which the IRS denied. *Id.*

The men then filed a complaint in the United States District Court for the District of Colorado seeking to overturn the IRS's decision. *Id.* at *1. The United States filed a Motion to Dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted ("Motion to Dismiss"). In its Motion to Dismiss, the United States identified four claims raised by Alpenglow, three of which are relevant to this appeal: (1) the IRS does not have the authority to disallow deductions under 26 U.S.C. § 280E without a criminal conviction; (2) § 280E violates the Sixteenth Amendment's definition of gross income; and (3) § 280E is an excessive fine that violates the Eighth Amendment.[3]

Following oral argument on the Motion to Dismiss, Alpenglow filed a Motion to Amend the Complaint "to allege further detail as to the specific deductions that the IRS denied." *Id.* The Amended Complaint alleged "the deductions denied were: rent for where the business was conducted; costs of labor; compensation of officers;

---

[3] The Motion to Dismiss also asserted that the district court did not have subject matter jurisdiction to issue the injunctive relief requested by Alpenglow in the complaint. *Alpenglow Botanicals, LLC v. United States (Alpenglow I)*, No. 16-cv-00258-RM-CBS, 2016 WL 7856477, at *1 (D. Colo. 2016) (unpublished). The district court denied Alpenglow's request for injunctive relief without addressing the subject matter jurisdiction argument, *id.* at *6 n.3, and Alpenglow does not challenge this ruling on appeal. Thus, the jurisdictional issue, which was limited to the injunction claim, is not before us.

advertising; taxes and licenses for doing business; depreciation; and other wages and salaries." *Id.* at *2. Alpenglow also filed a Motion for Partial Summary Judgment Refund Claim ("Motion for Partial Summary Judgment"). In addition to the claims identified in the Motion to Dismiss, Alpenglow's Motion for Partial Summary Judgment asserted two new claims: (1) the IRS's decision to apply § 280E was arbitrary because it had no evidence Alpenglow trafficked in a controlled substance; and (2) the IRS incorrectly disallowed exclusions for Alpenglow's costs of goods sold under 26 U.S.C. § 263A.[4] In its December 1, 2016 Opinion and Order, the district court granted Alpenglow's Motion to Amend the Complaint, granted the United States' Motion to Dismiss, and denied Alpenglow's Motion for Partial Summary Judgment ("Rule 12(b)(6) Dismissal").[5] *Id.* at *8.

Twenty-eight days after the entry of final judgment, Alpenglow filed a Motion to Alter or Amend the Judgment pursuant to Federal Rule of Civil Procedure 59(e) ("Rule 59(e) Motion"). *Alpenglow Botanicals, LLC v. United States (Alpenglow II)*, No. 16-cv-00258-RM-CBS, 2017 WL 1545659, at *1 (D. Colo. 2017) (unpublished). The motion contained a proposed Second Amended Complaint and asserted that the

_____

[4] In the Amended Complaint and Motion for Partial Summary Judgment briefing, Alpenglow also raised a Fifth Amendment claim, "alleg[ing] that the IRS should have informed plaintiffs that they were under investigation for violating the CSA." *Alpenglow I*, 2016 WL 7856477, at *6. The district court denied this claim, *id.*, and Alpenglow does not raise it on appeal.

[5] Alpenglow also filed a Motion for Order to Certify Question of Constitutionality of Colorado's Medical Marijuana Laws to Colorado State Attorney General Pursuant to 28 U.S.C. § 2403(b). *Alpenglow I*, 2016 WL 7856477, at *1. The district court denied this motion, *id.* at *8, and Alpenglow does not challenge that ruling on appeal.

5

district court "misapprehended controlling law" by failing to consider the three new claims Alpenglow raised as a request to amend the complaint—specifically, that (1) the IRS improperly disallowed costs of goods sold; (2) the IRS produced no evidence of trafficking; and (3) § 280E violates the Eighth Amendment. *Id.* Alpenglow argued the district court should grant leave to amend because the United States would not be prejudiced by allowing Alpenglow to file the Second Amended Complaint. *Id.* The district court denied the motion, concluding it was not required to consider arguments not alleged in the Amended Complaint and Alpenglow was not entitled to amend because the request was untimely. *Id.* at *1–3.

Alpenglow appeals both the Rule 12(b)(6) Dismissal and the court's denial of its Rule 59(e) Motion. We address each order in turn, beginning with the Rule 12(b)(6) Dismissal.

## II.    DISCUSSION

### A.  *Federal Rule of Civil Procedure 12(b)(6) Dismissal*

"We review a district court's dismissal under Federal Rule of Civil Procedure 12(b)(6) de novo." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012). "Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* While "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)), the "complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face,'" *Khalik*,

6

671 F.3d at 1190 (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Under the *Twombly*/*Iqbal* pleading standard, courts take a two-prong approach to evaluating the sufficiency of a complaint. *Iqbal*, 556 U.S. at 678–79. The first prong of the test requires the court to identify which pleadings "are not entitled to the assumption of truth." *Id.* at 679. This includes "legal conclusions" as well as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 678. The second prong of the test requires the court to "assume th[e] veracity" of the well-pleaded factual allegations "and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "Accordingly, in examining a complaint under Rule 12(b)(6), we will disregard conclusory statements and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 F.3d at 1191.

Alpenglow argues it raised three legal theories that plausibly stated a claim and therefore precluded the district court's dismissal of the Amended Complaint under Rule 12(b)(6). First, Alpenglow asserts the IRS lacks the general authority to investigate and deny tax deductions under § 280E without a criminal conviction, and that, even if it had such authority, the IRS has insufficient evidence of trafficking to apply § 280E in this case. Second, Alpenglow claims the IRS's calculation of Alpenglow's income violates the Sixteenth Amendment. Third, Alpenglow contends

7

§ 280E violates the Eighth Amendment.[6] We now explain why none of these arguments supports a conclusion that the district court erred in dismissing the complaint, beginning with the IRS's application of § 280E.

1. **Denial of Deductions Under 26 U.S.C. § 280E**

As indicated, Alpenglow raises two arguments relating to the IRS's denial of its business deductions under § 280E: the IRS (1) lacks the authority to investigate whether Alpenglow trafficked in controlled substances because such a determination requires the IRS to conclude that the business violated federal drug laws and (2) acted in an arbitrary manner because it did not have any evidence that Alpenglow trafficked in controlled substances.

*a. Authority to investigate*

Alpenglow claims the IRS could not use § 280E to deny the deductions in the absence of a conviction from a criminal court that its owners had violated federal drug trafficking laws. At the core of Alpenglow's argument is the assumption that a determination a person trafficked in controlled substances under *tax* law is essentially the same as a determination the person trafficked in controlled substances under *criminal* law. Because Alpenglow sees the two as inextricably linked, it contends the IRS lacks the authority to apply § 280E until *after* a federal prosecutor has

_____

[6] Although the district court based its dismissal of these claims on the United States' Motion to Dismiss, it also denied Alpenglow's Motion for Partial Summary Judgment under Federal Rule of Civil Procedure 56 "with respect to whether the IRS improperly denied the cost of goods sold, whether the IRS has authority to apply § 280E, and whether the application of § 280E violates the Sixteenth Amendment." *Alpenglow I*, 2016 WL 7856477, at *7.

8

investigated and charged the taxpayer with violating federal criminal law and a judge or jury in a criminal proceeding has issued a verdict of guilty.

We recently rejected this argument in *Green Solution*, 855 F.3d at 1120–21. There, Green Solution sued to enjoin the IRS from investigating Green Solution's business records in connection with an audit focused on whether certain business expenses should be denied under § 280E. We concluded the Anti-Injunction Act ("AIA") prevented the court from exercising jurisdiction over Green Solution's "suit for the purpose of restraining the assessment or collection of any tax." *Id.* at 1119 (quoting 26 U.S.C. § 7421(a)). In an attempt to avoid that conclusion, Green Solution argued the AIA did not preclude the action because a determination of "whether [it] trafficked in a controlled substance . . . is a criminal investigation properly carried out by the United States Attorney," *id.* at 1120, and thus "a determination of whether a taxpayer violated the CSA is not within the authority of the IRS," *id.* at 1121 (internal quotation marks omitted). In rejecting this argument, we noted that "§ 280E has no requirement that the Department of Justice conduct a criminal investigation or obtain a conviction before § 280E applies." *Id.* at 1121. And we noted that under 26 U.S.C. § 6201(a), "the IRS's obligation to determine whether and when to deny deductions under § 280E[] falls squarely within its authority under the Tax Code." *Id.* But because our analysis was limited to determining that the AIA precluded Green Solution's suit, we lacked subject matter jurisdiction to address the merits of the claim that "the IRS exceeded its authority under the Internal Revenue Code." *Id.*

9

at 1121 & n.8. Instead, we decided "only that the IRS's efforts to assess taxes based on the application of § 280E fall within the scope of the AIA." *Id.* at 1121 n.8.

Although not directly on point, our analysis in *Green Solution* is persuasive. Alpenglow offers no reason why we should conclude the IRS has the authority to *assess* taxes under § 280E, but cannot *impose* excess tax liability under § 280E. There is also no evidence that Congress intended to limit the IRS's investigatory power. Indeed, the Tax Code contains other instances where the applicability of deductions or tax liability turns on whether illegal conduct has occurred. *See* 26 U.S.C. § 162(c)(2) (denying deductions for illegal bribes, kickbacks, etc.); *id.* § 6663 (imposing civil tax penalty for fraud); *id.* § 165(e) (allowing deduction for theft loss). And other courts have upheld tax deficiencies against state-sanctioned marijuana dispensaries based on application of § 280E, without questioning the IRS's authority on this issue. *See Olive*, 792 F.3d at 1151; *Beck v. Comm'r*, 110 T.C.M. (CCH) 141, *5–6 (2015); *Canna Care, Inc. v. Comm'r*, 110 T.C.M. (CCH) 408, *3–4 (2015), *aff'd*, 694 F. App'x 570 (9th Cir. 2017); *Californians Helping to Alleviate Med. Problems, Inc. v. Comm'r (C.H.A.M.P.)*, 128 T.C. 173, 181–82 (2007).

Nonetheless, Alpenglow argues that because Congress has not expressly delegated the IRS authority to investigate violations of federal drug laws, the IRS cannot make the predicate finding necessary for a denial of deductions under § 280E. In support of this proposition, Alpenglow points to a series of cases from the Supreme Court striking regulations involving the taxation of illegal conduct: *Leary v. United States*, 395 U.S. 6 (1969); *Grosso v. United States*, 390 U.S. 62 (1968);

10

*Haynes v. United States*, 390 U.S. 85 (1968); and *Marchetti v. United States*, 390 U.S. 39 (1968). But these cases concern the invocation of the privilege against self-incrimination where the IRS investigation involved gambling, marijuana, or, in *Haynes*, possession of an unregistered firearm. *See Leary*, 395 U.S. at 13. Critically, these cases struck down IRS regulations that required the taxpayers to disclose information such as the names and addresses of the sellers and buyers, their registration numbers, and the quantity of the products sold. *See id.* at 15; *see also Marchetti*, 390 U.S. at 42–49. The Supreme Court concluded these tax provisions violated the Fifth Amendment due to the "substantial and 'real' . . . hazards of incrimination." *Marchetti*, 390 U.S. at 53 (quoting *Rogers v. United States*, 340 U.S. 367, 374 (1951)); *Leary*, 395 U.S. at 15. For example, in *Marchetti*, the Court noted that the regulation in question required the taxpayer to obtain a tax stamp, which necessarily "declar[ed] . . . a present intent" to violate gambling laws, and that federal and state courts had consistently relied on payment of the tax in subsequent criminal cases against the taxpayer. *Marchetti*, 390 U.S. at 47–48, 53. Indeed, some states and municipalities criminalized the mere possession of a tax stamp, making it impossible to comply with both laws. *Id.* at 48 n.10.

Alpenglow's case is easily distinguishable from these cases. First, Alpenglow has not raised a Fifth Amendment challenge on appeal and is instead citing these cases for the IRS's *authority* to tax based on its conclusion that the taxpayer is engaged in illegal conduct. But the Supreme Court has repeatedly asserted, including in the cited opinions, that "the unlawfulness of an activity does not prevent its

11

taxation." *Id.* at 44. The cases cited by Alpenglow were challenges to "the *methods* employed by Congress" in enforcing these statutes, *id.* (emphasis added), not the *authority* of the IRS to investigate and tax illegal activity. Second, these statutes involved the *imposition* of a *tax* for specific illegal conduct, not the *denial* of a tax *deduction*. Third, the tax information at issue in the cited cases was routinely shared with the Department of Justice and frequently used to support criminal charges, creating a tax provision that served as a proxy for a criminal investigation. Here, Alpenglow has failed to cite a single case in which the government relied on a denial of deductions under § 280E as evidence of guilt in a criminal trial. Accordingly, these decisions do not prohibit the IRS from applying § 280E to deny Alpenglow's deductions.

In summary, it is within the IRS's statutory authority to determine, as a matter of civil tax law, whether taxpayers have trafficked in controlled substances. Thus, the IRS did not exceed its authority in denying Alpenglow's business deductions under § 280E.

### b. *Evidence of trafficking*[7]

Alpenglow also contends the IRS's denial of its deductions was arbitrary because the IRS had no proof Alpenglow trafficked in a controlled substance. But in an action to recover taxes paid to the IRS, the "taxpayer has the burden to show not merely that the IRS's assessment was erroneous, but also the amount of the refund to which the taxpayer is entitled." *Dye v. United States*, 121 F.3d 1399, 1408 (10th Cir. 1997). Under this rule, the burden falls on Alpenglow to show error, not on the IRS to prove trafficking. *See Green Sol.*, 855 F.3d at 1121; *Feinberg*, 808 F.3d at 815. Alpenglow has not satisfied this burden. As the district court noted, the "Amended Complaint contains no allegations related to the IRS'[s] lack of evidence for disallowing plaintiffs' business expenses" and is instead "entirely premised upon the IRS'[s] alleged *lack of authority* to disallow" them. *Alpenglow I*, 2016 WL 7856477, at *7.

Rather than challenge the district court's conclusion, Alpenglow relies on 26 U.S.C. § 7491 and argues that once it raised the allegation that the IRS lacked

---

[7] Unlike Alpenglow's other arguments, the district court dismissed this claim solely within the context of Alpenglow's Motion for Partial Summary Judgment. *See Alpenglow I*, 2016 WL 7856477, at *7 ("The only argument . . . remaining in the motion for summary judgment is whether the IRS has failed to produce sufficient evidence that plaintiffs trafficked in a controlled substance."). "We review a district court's grant of summary judgment de novo." *Amparan v. Lake Powell Car Rental Cos.*, 882 F.3d 943, 947 (10th Cir. 2018). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)). "On appeal, we examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Id.* (internal quotation marks omitted).

evidence of Alpenglow's purported trafficking, "the burden shifted to the Government as a matter of law to show it actually had the evidence." Aplt. Br. at 29 (citing 26 U.S.C. § 7491). But § 7491 states:

> If, in any court proceeding, *a taxpayer introduces credible evidence* with respect to any factual issue relevant to ascertaining the liability of the taxpayer . . . , the Secretary shall have the burden of proof with respect to such issue.

26 U.S.C. § 7491(a)(1) (emphasis added).

Alpenglow did not make an arbitrariness argument in the Amended Complaint or allege any "credible evidence" that it is not engaged in marijuana trafficking. Thus, even if we assume the burden shifts to the IRS to prove its action was not arbitrary, Alpenglow is not relieved of its initial obligation to provide "credible evidence" that it does not traffic in a controlled substance. By choosing not to advance this theory, or allegations supporting it, in the Amended Complaint, Alpenglow has waived the claim. *See J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1299 (10th Cir. 2016) (holding that "Appellants waived [a disparate impact] basis for ADA liability by omitting it from their complaint").

## 2. Taxable Income Under the Sixteenth Amendment

Alpenglow next raises a Sixteenth Amendment claim consisting of two arguments: (1) under the constitutional definition of income, ordinary and necessary business expenses must be excluded from gross income calculations; and (2) the IRS improperly disallowed Alpenglow "costs of goods sold" exclusions under § 263A.

14

*a. Ordinary and necessary business expenses*

The Sixteenth Amendment grants Congress the power "to lay and collect taxes on incomes, from whatever source derived, without apportionment among the several States, and without regard to any census or enumeration." For purposes of calculating tax liability, the Internal Revenue Code includes two types of income: "gross income" and "taxable income."

The Tax Code codified the Sixteenth Amendment's definition of income by defining gross income as "all income from whatever source derived, including . . . [g]ross income derived from business." 26 U.S.C. § 61(a); *see Comm'r v. Glenshaw Glass Co.*, 348 U.S. 426, 432 n.11 (1955) (Section 61(a) "is based upon the 16th Amendment and the word 'income' is used in its constitutional sense." (internal quotation marks omitted)); *Samples v. Comm'r*, 98 T.C.M. (CCH) 27, *3 (2009) ("26 U.S.C. section 61(a) is in full accordance with Congressional authority under the Sixteenth Amendment to the Constitution to impose taxes on income without apportionment among the states." (quoting *Perkins v. Comm'r*, 746 F.2d 1187, 1188 (6th Cir. 1984))). "The starting point in the determination of the scope of 'gross income' is the cardinal principle that Congress in creating the income tax intended to use the full measure of its taxing power." *Comm'r v. Kowalski*, 434 U.S. 77, 82 (1977) (internal quotation marks omitted). To that end, Congress has the unquestioned constitutional and statutory authority to tax gross income. *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934). To ensure taxation of *income* rather than sales, the "cost of goods sold" is a mandatory exclusion from the calculation of a taxpayer's gross income. *See Max*

15

*Sobel Wholesale Liquors v. Comm'r*, 630 F.2d 670, 671 (9th Cir. 1980); *Sullenger v. Comm'r*, 11 T.C. 1076, 1077 (1948); 26 C.F.R. § 1.61-3(a) ("'[G]ross income' means the total sales, less the cost of goods sold . . . ."). Treasury Regulations include "inventory price," "transportation or other necessary charges incurred in acquiring possession of the goods," "cost of raw materials and supplies," "direct labor" costs, and "indirect production costs" as some of the mandatory exclusions to gross income. 26 C.F.R. § 1.471-3.[8]

---

[8] Cost means:

**(a)** In the case of merchandise on hand at the beginning of the taxable year, the inventory price of such goods.

**(b)** In the case of merchandise purchased since the beginning of the taxable year, the invoice price less trade or other discounts, except strictly cash discounts approximating a fair interest rate, which may be deducted or not at the option of the taxpayer, provided a consistent course is followed. To this net invoice price should be added transportation or other necessary charges incurred in acquiring possession of the goods. For taxpayers acquiring merchandise for resale that are subject to the provisions of section 263A, see §§ 1.263A–1 and 1.263A–3 for additional amounts that must be included in inventory costs.

**(c)** In the case of merchandise produced by the taxpayer since the beginning of the taxable year, (1) the cost of raw materials and supplies entering into or consumed in connection with the product, (2) expenditures for direct labor, and (3) indirect production costs incident to and necessary for the production of the particular article, including in such indirect production costs an appropriate portion of management expenses, but not including any cost of selling or return on capital, whether by way of interest or profit. See §§ 1.263A–1 and 1.263A–2 for more specific rules regarding the treatment of production costs.

26 C.F.R. § 1.471-3. "Treasury regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes . . . ." *Comm'r v. S. Tex. Lumber Co.*, 333 U.S. 496, 501 (1948).

In contrast, taxable income is the taxpayer's "gross income minus the deductions allowed" by statute. 26 U.S.C. § 63(a). Deductions under § 162(a) are matters of "legislative grace" specifically authorized by statute, *see Commodore Mining Co. v. Comm'r*, 111 F.2d 131, 134 (10th Cir. 1940), and "Congress has unquestioned power to condition, limit, or deny deductions from gross income in arriving at the net which is to be taxed," *id.* at 133 (citing *Helvering v. Indep. Life Ins. Co.*, 292 U.S. 371, 381 (1934)). One such statutorily-authorized deduction "allows a business to deduct from its gross income 'all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on the trade or business.'" *Olive*, 792 F.3d at 1148 (quoting 26 U.S.C. § 162(a)). The Supreme Court has defined "ordinary and necessary expenses" as those expenses that are "'appropriate and helpful' to 'the development of the (taxpayer's) business,'" *Colo. Springs Nat'l Bank v. United States*, 505 F.2d 1185, 1191 (10th Cir. 1974) (quoting *Comm'r v. Tellier*, 383 U.S. 687, 689 (1966)), and "normal[] in the particular business," *id.* at 1193 (quoting *Deputy v. du Pont*, 308 U.S. 488, 496 (1940)). However, § 162(a) prohibits certain deductions, such as "when the 'amount paid or incurred during the taxable year' is for the purpose of 'carrying on any trade or business consisting of trafficking in controlled substances.'" *Olive*, 792 F.3d at 1148 (quoting 26 U.S.C. § 280E).

Alpenglow does not challenge Congress's authority to limit or deny deductions. Nor does Alpenglow contest that the IRS specifically enumerates nearly all of the challenged expenses listed in the Amended Complaint as "Deductions."

17

Instead, Alpenglow argues that, despite being listed in the Tax Code as deductions, "certain necessary items like . . . ordinary and necessary [business] expenses" are actually exclusions that, like the cost of goods sold, must be subtracted from the calculation of a business's gross income. *See Davis v. United States*, 87 F.2d 323, 324 (2d Cir. 1937). Consequently, Alpenglow claims § 280E violates the Sixteenth Amendment because it "prevent[s] the deduction of expenses that a business could not avoid incurring." *See* Aplt. Br. at 25; *Alpenglow I*, 2016 WL 7856477, at *4.

Although there can be similarity between expenses that qualify as cost of goods sold and ordinary and necessary business expenses (such as labor),[9] the cost of goods sold relates to acquisition or creation of the taxpayer's product, while ordinary and necessary business expenses are those incurred in the operation of day-to-day business activities. The cost of goods sold is a well-recognized *exclusion* from the calculation of gross income, while ordinary and necessary business expenses are *deductions*. Indeed, while the Tax Code has statutorily excluded certain expenses from the calculation of gross income, only the cost of goods sold is mandatorily excluded by "[t]he very definition of 'gross income' . . . even in the absence of specific statutory authority for such exclusion." *See Max Sobel*, 630 F.2d at 671. In contrast, ordinary and necessary business expenses have been repeatedly recognized as statutorily-authorized deductions. *See, e.g.*, *Woolford Realty Co. v. Rose*, 286 U.S.

_____

[9] For example, while the cost of labor is typically considered "a subtractable cost of goods sold," Congress has the constitutional authority to "limit[] the amount which may be subtracted for income tax purposes, on account of salaries and labor, from the selling price of goods to a 'reasonable allowance' for salaries and wages." *See Pedone v. United States*, 138 Ct. Cl. 233, 239–40 (1957).

18

319, 328 (1932); *Burnet v. Sanford & Brooks Co.*, 282 U.S. 359, 363 (1931); *United States v. Akin*, 248 F.2d 742, 743–44 (10th Cir. 1957). Although the Supreme Court has never been confronted with the exact argument Alpenglow makes—that necessary business expenses are actually exclusions—the Court has indicated that Congress has the authority to disallow the types of unavoidable expenses Alpenglow identifies.

For example, prior to the enactment of 26 U.S.C. § 280E, the Supreme Court refused the IRS's attempt to deny the cost of rent and wages as ordinary and necessary business expense deductions for a gambling business operating in violation of state law. *Comm'r v. Sullivan*, 356 U.S. 27, 28 (1958). The Court held that, to deny the business "the normal deductions of the rent and wages necessary to operate it" would "come close to making this type of business taxable on the basis of its gross receipts, while all other businesses would be taxable on the basis of net income. *If that choice is to be made, Congress should do it.*" *Id.* at 29 (emphasis added); *see also Tellier*, 383 U.S. at 692, 693 ("Deduction of expenses falling within the general definition of § 162(a) may, to be sure, be disallowed by specific legislation, since deductions are a matter of grace and Congress can, of course, disallow them as it chooses." (internal quotation marks omitted)). And, in passing 26 U.S.C. § 280E, Congress did exactly that by denying ordinary and necessary business expenses incurred by businesses engaged in drug trafficking. Where the Supreme Court proposed that Congress make the choice whether to deny such deductions, we find it difficult to conclude Congress acted unconstitutionally in doing so. It would be

19

strange indeed for the Supreme Court to invite Congress to pass legislation violating the Constitution. It follows then that the business expenses here are deductions, not costs of goods sold. Indeed, the United States Tax Court has expressly reached that same conclusion.

In *Californians Helping to Alleviate Medical Problems*, the United States Tax Court analyzed § 280E and concluded that the ordinary and necessary business expenses associated with operating a medical marijuana business were deniable deductions. *C.H.A.M.P.*, 128 T.C. at 181–82. The tax court noted that the legislative history of § 280E indicates the statute was enacted "as a direct reaction to the outcome of a case in which [the tax] [c]ourt allowed a taxpayer to deduct expenses incurred in an illegal drug trade." *Id.* at 181. That case, *Edmondson v. Comm'r*, permitted the taxpayer to deduct not only the cost of goods sold, but also his "ordinary and necessary" business expenses. 42 T.C.M. (CCH) 1533 (1981), *superseded by statute*, 26 U.S.C. § 280E. In its report discussing the enactment of § 280E, the Senate Finance Committee cited *Edmonson* as the impetus for the provision and explained that § 280E was designed to disallow "[a]ll deductions and credits for amounts paid or incurred in the illegal trafficking in drugs." *C.H.A.M.P.*, 128 T.C. at 182 (citation omitted). Tellingly, the report's next sentence stated: "[t]o preclude possible challenges on constitutional grounds, the adjustment to gross receipts with respect to effective costs of goods sold is not affected by this provision of the bill." *Id.* (citation omitted); *see Peyton v. Comm'r*, 85 T.C.M. (CCH) 1345, *5

20

(2003) ("[S]ection 280E disallows deductions and credits (but not costs of goods sold) with respect to the sale of controlled substances.").

Alpenglow also argues that, by refusing to allow deductions for unavoidable business expenses, Congress is permitting the IRS to tax its gross receipts rather than its income. But, "it is [not] a violation of due process to impose a tax on gross receipts regardless of the fact that expenditures exceed the receipts. . . . The mere fact of intake being less than outgo does not relieve the taxpayer of an otherwise lawfully imposed tax." *Penn Mut. Indem. Co. v. Comm'r*, 277 F.2d 16, 20 (3d Cir. 1960).

The Internal Revenue Code and United States Tax Court have characterized ordinary and necessary business expenses as discretionary deductions—not mandatory exclusions—to gross income calculations. Congress's choice to limit or deny deductions for these expenses under § 280E does not violate the Sixteenth Amendment.

### b. Costs of goods sold

Alpenglow also claims the IRS improperly denied it an exclusion from income for costs of goods sold. Although Alpenglow did not make this argument until its Motion for Partial Summary Judgment, the district court treated it as part of Alpenglow's Sixteenth Amendment claim and dismissed it under Rule 12(b)(6). The court concluded Alpenglow did not "plausibly allege[] a claim that the IRS improperly disallowed the cost of goods sold [because] the Amended Complaint neither raises such a claim nor alleges any facts in that regard." *Alpenglow I*, 2016 WL 7856477, at *5. We agree.

21

In its Amended Complaint, Alpenglow alleges the IRS issued a *Notice of Deficiency* "denying all ordinary and necessary business *deductions* and increasing the income of Alpenglow." *See* Aplt. App. vol. 1, at 197 (emphasis added). The Amended Complaint does not include "costs of goods sold" as one of the denied deductions and nowhere in the Amended Complaint does Alpenglow claim, or allege facts to support, that the IRS's characterization of the denied expenses as deductions—rather than costs of goods sold—was erroneous.

## 3. Eighth Amendment

Alpenglow's third assertion is that § 280E is a penalty and enforcing it violates the Eighth Amendment. Our recent decision in *Green Solution*, 855 F.3d 1111, forecloses this argument. *Green Solution* held that "Section 280E is not a penalty," because "[t]he disallowance of a deduction is not an exaction imposed as a punishment. Deductions are not a matter of right. Neither do they turn upon equitable considerations. They are a matter of legislative grace." *Id.* at 1121 (internal quotation marks omitted). Alpenglow contends this conclusion in *Green Solution* is non-binding dicta. We are not convinced.

In *Green Solution,* the taxpayer argued the district court could assert subject matter jurisdiction over its injunction action against the IRS because § 280E is a penalty, not a tax subject to the AIA. *Id.* We rejected that argument, concluding instead that the attempt to enjoin the IRS's investigation into the applicability of § 280E fell squarely within the jurisdiction-stripping provision of the AIA. *Id.* Because the panel's holding in *Green Solution* that § 280E is not a penalty was

22

necessary to its disposition of the case, that holding was not dicta. *See Bishop v. Smith*, 760 F.3d 1070, 1083 (10th Cir. 2014) ("Statements which appear in an opinion but which are unnecessary for its disposition are dicta."). And although *Green Solution* assessed whether § 280E was a penalty under the Anti-Injunction Act, Alpenglow has offered no reason why the result should be different under the Eighth Amendment. We remain convinced that § 280E is not a penalty.

\* \* \*

Alpenglow has failed to state a claim entitling it to relief because § 280E does not violate the Eighth or Sixteenth Amendments and the IRS did not exceed its statutory authority in applying it to deny Alpenglow's business deductions. We therefore affirm the district court's Rule 12(b)(6) Dismissal.

### B.  *Federal Rule of Civil Procedure 59(e) Motion*

We turn now to the denial of Alpenglow's Motion to Alter or Amend the Judgment pursuant to Federal Rule of Civil Procedure 59(e). "We review Rule 59(e) decisions for abuse of discretion." *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1228 (10th Cir. 2016). "An abuse of discretion is defined in this circuit as judicial action which is arbitrary, capricious, or whimsical." *United States v. Pacheco*, 884 F.3d 1031, 1047 (10th Cir. 2018) (quotation marks omitted). Grounds warranting a motion to alter or amend the judgment pursuant to Rule 59(e) "include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "Thus, a motion for reconsideration is

23

appropriate where the court has misapprehended the facts, a party's position, or the controlling law." *Id.* "It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Id.* To reverse the district court's denial of a Rule 59(e) motion, "we must have a definite and firm conviction that the lower court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Etherton*, 829 F.3d at 1228 (internal quotation marks omitted).

### 1. Motion to Amend the Complaint

"An issue raised for the first time in a motion for summary judgment may properly be considered [as] a request to amend the complaint, pursuant to Federal Rule of Civil Procedure 15." *Pater v. City of Casper*, 646 F.3d 1290, 1299 (10th Cir. 2011). "We therefore construe the district court's refusal to address the new issue as a denial of plaintiffs' request." *Id.* "Although leave to amend shall be freely given when justice so requires," *Las Vegas Ice & Cold Storage Co. v. Far W. Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990) (internal quotation marks omitted), "[t]he decision to grant leave to amend the pleadings is within the discretion of the trial court, and we will not reverse the court's decision absent an abuse of discretion," *Pater*, 646 F.3d at 1299 (internal quotation marks omitted).

In light of our liberalized pleading rules, plaintiffs generally "should not be prevented from pursuing a claim merely because the claim did not appear in the initial complaint." *Id.* at 1299. But plaintiffs cannot "wait until the last minute to ascertain and refine the theories on which they intend to build their case." *Id.*

24

(quotation marks omitted). We have repeatedly held that, "untimeliness alone is a sufficient reason to deny leave to amend when the party filing the motion has no adequate explanation for the delay." *Id.* (quotation marks omitted); *see Las Vegas Ice & Cold Storage Co.*, 893 F.2d at 1185. And, "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Las Vegas Ice & Cold Storage Co.*, 893 F.2d at 1185 (quotation marks omitted).

In its Rule 59(e) Motion, Alpenglow challenges the district court's Rule 12(b)(6) Dismissal Order and asserts that three of its claims should have been permitted to be advanced in a Second Amended Complaint: (1) the IRS incorrectly disallowed deductions for costs of goods sold under § 263A; (2) the IRS failed to provide any evidence of trafficking to support its denial of Alpenglow's deductions under § 280E; and (3) § 280E violates the Eighth Amendment. *Alpenglow II*, 2017 WL 1545659, at *1–3. Alpenglow claimed the court "misapprehended controlling law" by dismissing these claims for failure to sufficiently raise and/or support them in its Amended Complaint rather than treating them as a request to further amend the complaint. *Id.* at *1. Alpenglow also asserted that the district court relied on an erroneous public policy announcement to support its dismissal of Alpenglow's claim.

The district court noted that, although it had the ability to consider the arguments as a request to further amend the complaint, it was not required to do so. *Id.* The court also indicated that, even if it elected to consider Alpenglow's request to

25

amend the complaint, it would deny the motion as untimely because Alpenglow had sufficient facts to raise all three arguments in its original or Amended Complaint. *Id.* at *2. And the court noted that it did not make a public policy analysis and would not consider Alpenglow's newly raised "Dead Letter Rule" argument on untimeliness grounds. On appeal, Alpenglow argues this decision was an abuse of the district court's discretion. We have reviewed the district court's decision on each of these claims above and concluded the court did not err in dismissing them for failure to state a claim. We now conclude the district court did not abuse its discretion in refusing to allow Alpenglow to amend its complaint to address the relevant deficiencies.

*a. Costs of goods sold*

Alpenglow first argues the district court abused its discretion in refusing to grant it leave to amend the complaint to include a claim that the IRS improperly included Alpenglow's cost of goods sold in calculating its tax liability. As discussed above, the district court denied this claim because Alpenglow's Amended Complaint failed to plausibly allege it. To address this deficiency, Alpenglow attached a proposed Second Amended Complaint to its Rule 59(e) Motion. The critical difference between the two complaints is that Alpenglow's proposed Second Amended Complaint asserts the IRS "den[ied] all ordinary and necessary business deductions, *including* the cost of goods sold," whereas the Amended Complaint made "[t]he same allegation (*minus* reference to cost of goods sold)." *Id.* (emphasis added).

26

The district court denied the motion to amend the complaint on untimeliness grounds because, despite having all the necessary facts, Alpenglow failed to raise the claim earlier. As discussed above, Alpenglow failed to include the IRS's alleged denial of its cost of goods sold expenses in its Amended Complaint or to challenge the IRS's characterization of its denied expenses as deductions, despite having received the *Notice of Deficiency* and the United States' Motion to Dismiss—both of which claimed the denied deductions *excluded* costs of goods sold. Under these circumstances, the district court's determination that Alpenglow had the facts necessary to raise this argument sooner is not "a clear error of judgment." *See Etherton*, 829 F.3d at 1228 (quotation marks omitted).

   *b. Evidence of trafficking*

Alpenglow concedes it did not raise the IRS's alleged lack of trafficking evidence in the Amended Complaint, but claims it could not have done so because "the fact that the IRS did not have any evidence of purported trafficking came about due to the representations made by the IRS in its response to the Plaintiff's Motion for Summary Judgment." Aplt. Br. at 33. But, in its Motion for Partial Summary Judgment on this issue, Alpenglow cites the IRS's failure to make factual findings establishing the purported trafficking conduct in the *Notice of Deficiency* as evidence of the arbitrariness of the IRS's decision. Because Alpenglow received the *Notice of Deficiency* before it filed its initial complaint, as well as its Amended Complaint, the district court's conclusion that Alpenglow had all the necessary facts to argue this

27

claim sooner is not "a clear error of judgment." *See Etherton*, 829 F.3d at 1228

(quotation marks omitted).

  *c. Eighth Amendment*

  Unlike its other arguments on appeal, Alpenglow's claim that § 280E violates

the Eighth Amendment was raised in the Amended Complaint and dismissed by the

district court under Federal Rule of Civil Procedure 12(b)(6). *See Alpenglow II*, 2017

WL 1545659, at *2. The district court held Alpenglow did not raise a plausible

Eighth Amendment claim because "[t]he Amended Complaint is entirely devoid of

any allegations pertaining to the effect that § 280E has had on plaintiffs' ability to do

business." *Alpenglow I*, 2016 WL 7856477, at *6. Although Alpenglow argues the

district court should have allowed it to amend the complaint to allege sufficient

factual allegations to support its Eighth Amendment argument, we have concluded

that § 280E is not a penalty and thus does not violate the Eighth Amendment. So any

amendment to the complaint would be legally futile and the district court did not

abuse its discretion by denying the motion. *See United States v. Greer*, 881 F.3d

1241, 1244 (10th Cir. 2018), *petition for cert. filed*, 17-8775 (May 4, 2018). ("We are

not bound by the district court's reasoning and may affirm on any ground adequately

supported by the record." (internal quotation marks omitted)).

## 2. Public Policy/Dead Letter Rule

  Alpenglow raises two distinct but related policy arguments to support its claim

that the IRS should not be permitted to apply § 280E to tax the gross income, rather

than the net income, of marijuana dispensaries operating in accordance with state

law. For the reasons discussed below, we reject both arguments and conclude the district court acted well within its discretion in denying Alpenglow's Rule 59(e) Motion with respect to this claim.

First, Alpenglow asserts that, in its order granting the United States' Motion to Dismiss, the district court conducted an inaccurate analysis regarding the "public policy exception" to the requirement that taxpayers be taxed on net income and that "the court relied upon this analysis, at least in part, in its rulings." Aplt. Br. at 34. In support, Alpenglow quotes the district court's statement: "[i]t is at least arguable whether allowing a taxpayer to deduct from its gross income expenses incurred in allegedly selling marijuana to the public frustrates the policy of the CSA." *Alpenglow I*, 2016 WL 7856477, at *5 n.2. According to Alpenglow, this comment shows the district court conducted a public policy analysis and concluded the state-approved sale of medical marijuana frustrates a sharply-defined public policy. Alpenglow takes issue with this inferred conclusion, but we need not address it here. The district court clarified in its order denying the Rule 59(e) Motion that the public policy discussion was "entirely irrelevant to the [c]ourt's ultimate finding," *Alpenglow II*, 2017 WL 1545659, at *3, and "had nothing to do with resolving the issue before the [c]ourt: plaintiffs' argument that the Constitution forbids including in gross income the cost of ordinary and necessary business expenses," *id.* at *4.

Second, Alpenglow relies on *Sterling Distributors, Inc. v. Patterson*, to claim there is a "generally accepted" Dead Letter Rule prohibiting the IRS from denying deductions under a law "[w]hen there is a public policy of non-enforcement of the

29

law." Aplt. Br. at 39, 40 (citing 236 F. Supp. 479, 483–84 (N.D. Ala. 1964)). First, Alpenglow has failed to demonstrate any widespread acceptance or adoption of the "Dead Letter Rule" announced in *Sterling Distributors*. To the contrary, the Supreme Court has held that a public policy analysis on the disallowance of deductions under the Tax Code is only appropriate "where Congress has been wholly silent," *Tellier*, 383 U.S. at 693, because "[d]eduction of expenses falling within the general definition of § 162(a) may, to be sure, be disallowed by specific legislation, since deductions 'are a matter of grace and Congress can, of course, disallow them as it chooses,'" *id.* (quoting *Sullivan*, 356 U.S. at 28). *See also Sullivan*, 356 U.S. at 29 ("If th[e] choice [to tax illegal business on the basis of gross income] is to be made, Congress should do it."). Congress has not been silent here; by enacting § 280E, Congress has spoken expressly on its intent to prohibit the deduction of business expenses related to drug trafficking illegal under federal law.

Second, even assuming the existence of a Dead Letter Rule, Alpenglow cannot succeed on such a theory. The district court refused to consider this argument because Alpenglow "failed to raise it when [it] could have done so at any time during the parties' pre-Judgment briefing." *Alpenglow II*, 2017 WL 1545659, at *3 n.4. The district court did not abuse its discretion in failing to consider this untimely argument. *See Las Vegas Ice & Cold Storage Co.*, 893 F.2d at 1185. Furthermore, the Department of Justice has specifically rescinded its former policy of non-prosecution for marijuana dispensaries complying with state law, evidencing governmental intent to enforce this law. *See* Memorandum from Jefferson B. Sessions, Att'y Gen., U.S.

30

Dep't of Justice for all U.S. Att'ys (Jan. 4, 2018). As such, § 280E would not constitute a Dead Letter Rule, even if such a rule existed.

\* \* \*

The district court was not "arbitrary, capricious, or whimsical" in holding that Alpenglow's request to amend the complaint was untimely. *See Pacheco*, 884 F.3d at 1047. Therefore, the court did not abuse its discretion in denying Alpenglow's Rule 59(e) Motion.

## III.   CONCLUSION

We AFFIRM the dismissal of Alpenglow's suit under Federal Rule of Civil Procedure 12(b)(6) and the denial of Alpenglow's Motion to Alter or Amend the Judgment pursuant to Federal Rule of Civil Procedure 59(e).