**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**September 25, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

EARL OLDHAM,

        Plaintiff - Appellant,

v.

        No. 16-7069

O.K. FARMS, INC.,

        Defendant - Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**
**(D.C. No. 6:15-CV-00384-RAW)**

---

Brian R. McLaughlin of McLaughlin Law Firm, PLLC, Stigler, Oklahoma, for Plaintiff-Appellant.

Clayton E. Bailey of Bailey Brauer PLLC, Dallas, Texas, for Defendant-Appellee.

---

Before **LUCERO**, **McKAY,** and **HARTZ**, Circuit Judges.

---

**McKAY**, Circuit Judge.

---

Plaintiff Earl Oldham appeals the district court's entry of summary judgment in favor of Defendant O.K. Farms in this contract case. Because the district court's ruling was based on a theory that was not raised by Defendant or briefed by either party, we reverse and remand for further proceedings.

# I.

Plaintiff has been raising chickens for O.K. Farms since 1995. On March 21, 2014, he and O.K. entered into the chicken-growing contract at issue in this case. Under the contract, O.K. would provide Plaintiff with chickens to raise, the chickens would remain O.K.'s property, and Plaintiff would be paid for providing for their care. The chickens—also referred to as broilers—would ultimately be processed for human consumption. The contract had a three-year duration, but O.K. retained the right to terminate the contract for certain specified reasons, including "[b]reach of any term or condition of this contract," "[a]bandonment or neglect of a flock," and "[f]ailure to care for or causing damage to [O.K.'s] equipment or property." (Appellee's Suppl. App. at 94.)

Early in the morning of May 20, 2016, Plaintiff discovered that one of his three chicken houses had flooded after an overnight rainstorm. He contacted O.K. and requested help. The O.K. field service technician who was assigned to his area arrived at Plaintiff's farm at about 6 a.m. Plaintiff told him he would need help, and the technician got on the phone to discuss the problem with his supervisor, O.K.'s broiler manager. While he was doing so, Plaintiff briefly left the farm to open his tire shop, returning fifteen to twenty minutes later. During the phone call, the broiler manager told the field technician that this was Plaintiff's problem, not O.K.'s, and that Plaintiff would have to handle it.

At about 9 a.m., Plaintiff spoke on the phone with the broiler manager. The manager asked him how many of the chickens had survived the flooding and what he planned to do to address the problem. Plaintiff responded that about eighty percent of the chickens were alive and that his grandson was present to assist him. The manager asked if Plaintiff was planning on getting additional help because the groundwater flooding in the house was an animal-welfare violation. According to the manager, Plaintiff then became irritated and complained about the lack of help provided by O.K. When the manager asked what Plaintiff wanted O.K. to do, Plaintiff told him to "come get these birds out of the house." (*Id.* at 347.) According to the manager, he reminded Plaintiff that it was Plaintiff's responsibility to raise and care for the chickens, but Plaintiff interrupted him and said that O.K. "could just come get all these goddamn birds." (*Id.*) In his deposition, Plaintiff denied ever saying this, but testified that, when the manager asked him what he wanted O.K. to do, he said, "I want you to come and catch them." (*Id.* at 64.) He testified that he needed O.K. to get the chickens out of the flooded henhouse so he could clean it up and make it habitable again.

An O.K. catch crew arrived at Plaintiff's farm at about 11 a.m. Because their equipment wouldn't work in the mud of the flooded henhouse and because they didn't want to spend all day working in wet clothing, they decided to remove the chickens from the two dry henhouses first. After removing the chickens from the second and third henhouses, they then removed the chickens—most of them

dead by now—from the flooded house, finishing up at about 9 p.m. that night. The live chickens were brought to a nearby farm to be raised by a different farmer. Plaintiff was paid for the work he had done in raising the surviving chickens to this point, reduced by various expenses such as the costs of catching and moving the chickens.

On June 3, 2015, O.K. sent Plaintiff a letter providing him with a ninety-day notice of contract termination. After describing the events of May 20, O.K. summarily asserted that it was entitled to terminate for three separate contractual reasons: (1) Plaintiff's "[b]reach of any term or condition" of the contract; (2) Plaintiff's "[a]bandonment or neglect of a flock, failure to provide care or follow directions and instructions regarding the care and maintenance of the flock by [O.K.'s] representatives"; and (3) Plaintiff's "[f]ailure to care for or causing damage to [O.K.'s] equipment or property." (*Id.* at 237.)

Plaintiff filed suit in state court, alleging that O.K. breached the contract by terminating the agreement without adequate cause. O.K. removed the action to federal court and filed a motion for summary judgment.

In its motion for summary judgment, O.K. provided its reasoning behind each of the three contractual reasons identified in the termination letter. First, O.K. argued that Plaintiff breached the terms and conditions of the contract by failing to adequately provide for the animal welfare of the chickens in his care. Second, O.K. argued that Plaintiff "abandoned and neglected the flock to open his

-4-

tire shop when the broilers were encountering a threat to their welfare." (Appellant's App. at 34.) Finally, O.K. argued that the flooding in the chicken house "damaged O.K.'s property—that is, broilers." (*Id.*) With the exception of the single-sentence argument that Plaintiff abandoned his flock by briefly leaving to open his tire shop, O.K.'s motion for summary judgment was premised entirely on its contention that the flooding problems in the henhouse were the result of Plaintiff's neglect and that the harms caused by this neglect justified O.K.'s early termination of the contract. In response, Plaintiff contended that the flooding was the result of an "act of God," not neglect, and he cited for support to the deposition testimony of the O.K. field technician—the only O.K. employee who was at the scene from the beginning—that this was an act of God and that Plaintiff did nothing wrong. As for O.K.'s abandonment argument, Plaintiff argued that he did not abandon his chickens by leaving for fifteen to twenty minutes while the field technician was at the scene telephoning his supervisor to determine what they should do about the situation.

The district court held a hearing on the summary judgment motion on August 18, 2016. At this hearing, the district court indicated that it found all of O.K.'s arguments to be unpersuasive. The court then said:

> I had a revelation, I was coming in here, well, as of yesterday even planning on denying the motion for summary judgment and proceeding to a trial. Probably would have been a one-day bench trial, and I was actually looking forward to it, would have been very interesting. And one reason I – it was – this is a revelation is

because you didn't really argue – the defendants didn't really argue this point except in the broadest possible way.

(*Id.* at 87.)  The district court stated that it had looked at the undisputed material facts from the summary judgment pleadings and found "questions of fact galore" on all of the arguments raised by O.K. in its motion.  (*Id.* at 90.)  "But," the court continued, "all that doesn't matter," because Plaintiff "didn't say come take away the chickens from the flooded henhouse.  He said come take them all."  (*Id.*)  The court reasoned that because there was "nothing in the evidentiary material showing [that the chickens in the other henhouses] were in danger at all, he abandoned them" by telling O.K. to come pick them all up.  (*Id.*)  The court told O.K.'s attorney that he wished the attorney had raised this argument in his summary judgment motion and spared the court the time it spent preparing for trial on the issues that were briefed by the parties.  The court then granted O.K.'s motion for summary judgment on the basis that Plaintiff abandoned the flock by telling O.K. to take all of the birds, thus permitting O.K. to terminate the contract.

Although the district court engaged in some discussion with O.K.'s attorney in making this ruling, the court never gave Plaintiff's attorney any opportunity to address the court's "revelation" about this *sua sponte* theory of the case.  Rather, the court simply announced its reasoning during a colloquy with OK.'s attorney, then entered judgment in favor of O.K. and ended the summary judgment hearing.

This appeal followed.

## II.

As an initial matter, we will briefly address O.K.'s argument that the district court's summary judgment ruling was in fact based on an argument that had been raised by O.K. and briefed by the parties. O.K. argues that it raised this argument by pointing out "that the Contract authorized O.K. to terminate the Contract with [Plaintiff] if he *abandoned* or neglected the flock." (Appellee's Br. at 20.) However, merely mentioning a contractual provision is a far cry from arguing that a particular action breached this contractual provision. The only argument regarding abandonment that O.K. raised in its summary judgment brief was the one-sentence argument that Plaintiff abandoned his flock by leaving for fifteen to twenty minutes to open his tire shop after the field technician arrived at his farm. O.K. never even hinted at any argument that Plaintiff might instead or additionally have abandoned his flock by telling the broiler manager a few hours later that O.K. should come get all of the birds. O.K.'s citation to the contractual provision and reliance on the tire-shop theory of abandonment did not put Plaintiff on notice of the separate and distinct theory of abandonment on which the district court ultimately granted judgment. After carefully reviewing the summary judgment record and the parties' arguments, we are persuaded that the district court granted judgment on a basis that was not raised by O.K. or briefed by either party (as, indeed, the district court's own language at the summary judgment hearing reflects).

The rules of civil procedure permit a district court to grant a summary judgment motion "on grounds not raised by a party," but only "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(2). Thus, "[t]hough we generally don't favor the granting of summary judgment *sua sponte*, a district court may do so if the losing party was on notice that she had to come forward with all of her evidence." *Johnson v. Weld County*, 594 F.3d 1202, 1214 (10th Cir. 2010) (internal quotation marks and brackets omitted). "[E]ven if such notice is lacking, we will still affirm a grant of summary judgment if the losing party suffered no prejudice from the lack of notice." *Id.* If such prejudice is shown, however, then we will reverse.

In this case, the district court gave no notice that it intended to grant O.K.'s summary judgment motion on a basis that was not raised by O.K. Nor did the district court give Plaintiff any time to respond to this decision, much less a reasonable amount of time to consider the court's *sua sponte* theory and to develop the legal and factual arguments to dispute it. Moreover, our review of the record and of the arguments raised by the parties persuades us that Plaintiff was prejudiced by this lack of notice and opportunity to respond.

For instance, Plaintiff argues in his appellate brief that the reason he asked O.K. to pick up all of the chickens, not just the chickens in the flooded henhouse, was that the weather forecast predicted substantial additional rainfall and he was concerned that the other henhouses would also flood. Thus, he argues, his request

for O.K. to take all of the chickens reflects his attempt to ensure the chickens' welfare, which is the opposite of abandonment. O.K.'s only response to this argument is to contend that we should ignore it because it is not supported by the record. This response is both factually incorrect and beside the point. First, this argument does indeed find support in the record. (*See* Appellee's Suppl. App. at 361 ("[The manager] asked about the other two (2) barns. I told him that he could catch them too, because we had more rain forecasted, and I didn't want the other two (2) barns to flood as well.").) And, more importantly, a party who was prejudiced by the lack of advance notice of a *sua sponte* summary judgment decision generally will not have come forward with all of his evidence or arguments in the district court proceedings; indeed, it is the very fact that the losing party did not develop and present his evidence and/or arguments below that will help to establish prejudice from the lack of notice. *See Scull v. New Mexico*, 236 F.3d 588, 601 (10th Cir. 2000); *see also Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir. 1989) ("When a party moves for summary judgment on ground A, his opponent is not required to respond to ground B—a ground the movant might have presented but did not."). Of course, to establish the requisite prejudice, the losing party must, at the least, identify for the appellate court what additional arguments he could have made or evidence he could have produced or relied on to undermine the district court's ruling. *Cf. Johnson*, 594 F.3d at 1214 (affirming the district court's *sua sponte* grant of summary judgment where the

plaintiff "relie[d] on exactly the same evidence and arguments" on appeal that she made before the district court and "identifie[d] no way in which she was prejudiced by the district court's chosen procedural course"). But Plaintiff has sufficiently done so here.

As previously noted, the district court granted summary judgment in this case on a *sua sponte* basis it announced only in the summary judgment hearing. Plaintiff was given no advance notice that the court might grant judgment based on his statement to the broiler manager that O.K. should come catch all of the birds, which was mentioned in O.K.'s summary judgment brief only as a background fact and not as a basis for entering judgment. Nothing about O.K.'s summary judgment brief put Plaintiff on notice that he might need to come forward with all of his evidence regarding precisely what he said to O.K. about coming to catch all of the chickens, and why he said it, in order to rebut a possible abandonment finding. And Plaintiff's evidence that he was motivated by concern for the other chickens' welfare might indeed have been relevant to the district court's holding that Plaintiff legally abandoned the chickens by telling O.K. to come get them.

In *Johnson v. Weld County*, we held that a plaintiff had not demonstrated prejudice where "she relie[d] on exactly the same evidence and arguments she made before the district court, and identifie[d] no way in which she was prejudiced by the district court's chosen procedural course." 594 F.3d at 1214.

-10-

Here, by contrast, Plaintiff has raised different arguments than he raised below—arguments that directly address the district court's *sua sponte* reasoning and that he was not provided an opportunity to make below—and has argued that he was prejudiced by the district court's entry of judgment on this basis without considering any of the contrary arguments he might have made given notice and a reasonable time to respond. We are persuaded that Plaintiff had shown prejudice from the court's *sua sponte* summary judgment decision. We therefore reverse and remand for further proceedings in accordance with this opinion.

## III.

**REVERSED AND REMANDED.**