**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 27, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ISMAEL LOPEZ,

    Plaintiff - Appellant,

v.

STANLEY BLACK & DECKER, INC.;
BLACK & DECKER (U.S.), INC.,

    Defendants - Appellees,

and

DELTA INTERNATIONAL
MACHINERY CORPORATION; DELTA
MACHINE COMPANY, INC.; GLH,
LLC; ROCKWELL INTERNATIONAL
CORPORATION; ROCKWELL
AUTOMATION, INC.; PENTAIR, INC.;
KEARNEY & TRECKER
CORPORATION,

    Defendants.

No. 18-2055
(D.C. No. 2:15-CV-00193-JB-GJF)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BACHARACH**, **PHILLIPS**, and **EID**, Circuit Judges.
_____

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. _See_ Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

_____

After he was injured in Texas by a table saw manufactured by defendant Delta International Machinery Corporation (Delta), plaintiff Ismael Lopez brought this products liability action in New Mexico state court against Delta and several related entities. The defendants removed the case to the District of New Mexico. The district court dismissed all defendants for lack of personal jurisdiction except Stanley Black & Decker, Inc. and Black & Decker (U.S.), Inc. (the Black & Decker defendants). It then granted summary judgment in favor of the Black & Decker defendants, reasoning that under Texas law they could not be held liable as Delta's corporate successors. Mr. Lopez appeals (1) the district court's grant of summary judgment, (2) its denial of his motion for additional discovery under Fed. R. Civ. P. 56(d) or for additional time to respond under Fed. R. Civ. P. 6(b), and (3) the denial of his Fed. R. Civ. P. 59(e) motion to alter or amend the judgment.[1] We affirm the challenged orders and the judgment.

---

[1] In his notice of appeal Mr. Lopez purported to appeal from the district court's Rule 59(e) order. Although he mentions that order in passing in his opening brief, *see* Aplt. Opening Br. at 10; *id.* at 42 & n.3, he does not construct a specific appellate argument concerning the order. He does not discuss the standards by which the district court evaluates such motions or explain how the district court abused its discretion by denying his motion. *See Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) (discussing grounds that warrant grant of Rule 59(e) motion). In any event, we affirm the denial. The district court denied the Rule 59(e) motion because it determined it had not erred in granting the defendants' motion for summary judgment or in denying Mr. Lopez additional time to respond. For the reasons we explain throughout this order and judgment, Mr. Lopez has failed to show this denial represented an abuse of discretion.

## BACKGROUND

### 1. Mr. Lopez's Complaint

On August 23, 2012, Mr. Lopez was using a table power saw manufactured by Delta when the blade severed two of his fingers. The accident occurred in El Paso, Texas.

Delta had manufactured the saw in May 2001. On July 16, 2004, the Black & Decker Corp. acquired from Pentair, Inc., a Minnesota corporation (Pentair) several of Pentair's subsidiaries, including Delta. In 2010, Black & Decker Corp. became a wholly owned subsidiary of The Stanley Works. The Stanley Works then changed its name to Stanley Black & Decker, Inc. The other Black & Decker defendant in this action, Black & Decker (U.S.) Inc., is a subsidiary of Black & Decker Corp.

In 2015, Mr. Lopez, a resident of New Mexico, filed this action in New Mexico state court against various entities including Delta, Pentair, Stanley Black & Decker, Inc., and Black & Decker (U.S.) Inc. The defendants removed the case to the District of New Mexico.

The district court dismissed all defendants from the case for lack of personal jurisdiction except the Black & Decker defendants. It granted Mr. Lopez leave to file a first amended complaint (FAC).[2] In the FAC, he alleged that the saw was

---

[2] Mr. Lopez sued each of the Black & Decker defendants "individually and d/b/a DELTA INTERNATIONAL MACHINERY CORP." but consistent with the earlier dismissal did not include Delta as a separate defendant in the FAC. *See* Aplt. App., Vol. 1 at 20.

"manufactured and put in the stream of commerce by the BLACK & DECKER Defendants." Aplt. App., Vol. 1 at 21. The FAC did not mention Delta's role as manufacturer of the saw or present a theory concerning the Black & Decker defendants' liability as Delta's corporate successors.

## 2. Black & Decker Defendants' Summary Judgment Motion

The district court set a discovery deadline of May 23, 2016. On December 29, 2015, less than a week after Mr. Lopez sought leave to file his FAC, the Black & Decker defendants moved for summary judgment. They argued they were not liable "because they did not design, manufacture, market, or sell the subject table saw and, furthermore, they are not subject to successor liability for any acts or omissions on the part of their predecessor." *Id.* at 26-27. They denied they had assumed Delta's liabilities related to the design and manufacture of the saw. They further asserted that notwithstanding Black & Decker Corp.'s acquisition of "all the shares and outstanding stock of Delta," Delta "continues to exist as a separate and distinct legal entity." *Id.* at 28.

The Black & Decker defendants further argued that Texas law governed the issue of successor liability because the underlying action was characterized as a tort, and the events giving rise to tort liability occurred in Texas. Under Texas law, a successor corporation could only incur liability if it expressly assumed that liability. The Black & Decker defendants denied they had expressly assumed Delta's liability.

The motion for summary judgment was supported by an Affidavit from Theodore C. Morris, Assistant General Counsel and Assistant Secretary of Stanley

4

Black & Decker, Inc. Mr. Morris explained the relationships between the defendant entities and described Black & Decker Corp.'s acquisition of Delta's shares and outstanding stock and Delta's continued existence after the acquisition. He averred the Black & Decker defendants had "not assumed or otherwise become legally responsible for historic liabilities of Delta related to the design and manufacture of a Delta Unisaw Model 36-812 manufactured in 2001." *Id.* at 39-40.

### 3. Mr. Lopez's Rule 56(d) Motion

In response, on January 15, 2016, Mr. Lopez filed a motion under Rule 56(d) (formerly Rule 56(f)), seeking additional time for discovery. Alternatively, he moved for an extension of time under Fed. R. Civ. P. 6(b), seeking an additional two weeks from the court's ruling on the 56(d) motion to respond to the summary-judgment motion. He argued he needed more time to obtain discovery on the successor liability issues. He also argued that further discovery might show that New Mexico law, not Texas law, should control the issue of successor liability.

### 4. The Motion Hearing

The district court held a motion hearing on March 15, 2016. At the hearing, counsel for the Black & Decker defendants presented excerpts from the 2004 Purchase Agreement (PA) between Black & Decker Corp. and Pentair. Mr. Lopez's counsel complained that the defendants had only provided him with the PA about two weeks prior to the hearing. He stated he would like to have an expert look at the agreement and to figure out the relationship between Black & Decker and Delta. But the district court stated its inclination to grant the motion for summary judgment.

5

### 5. Mr. Lopez's Supplemental Brief

On July 12, 2016, Mr. Lopez filed a supplemental brief in support of his Rule 56(d) motion and his request for extension of time. He submitted the PA and its supporting schedules with his brief, again complaining that he had not received the PA from the defendants' counsel until two weeks before the March 15 hearing. He further complained that the defendants failed to file the PA and supporting schedules in support of their motion for summary judgment.

In Mr. Lopez's supplemental brief, the Black & Decker defendants' response, and his reply, the parties discussed whether the PA's terms made the defendants liable under successor liability principles. In September 2016, the district court entered a brief order granting the defendants' motion for summary judgment and denying Mr. Lopez's Rule 56(d) and 6(b) motions, stating that a longer, more reasoned order would follow.

### 6. Memorandum Opinion

On July 24, 2017, the district court filed its 118-page Memorandum Opinion. The court determined there was no genuine issue of fact that the events giving rise to the suit occurred in El Paso, Texas and that the Black & Decker defendants did not design, manufacture, market, or sell the table saw. It found the PA unambiguous and therefore subject to construction as a matter of law. The PA contained a provision adopting Delaware law, and would be construed under the laws of that state.

Under the PA's terms, the district court reasoned, the Black & Decker Corp. acquired an equity interest in Delta as a "transferred subsidiary" of Pentair. But

6

Delta still existed both as a separate and distinct legal entity and an indirect subsidiary of the Black & Decker Corp. Although Delaware law determined whether Black & Decker Corp. and Pentair intended that Black & Decker Corp. would assume Delta's liabilities in the PA, Texas law determined the remaining issues, including the ultimate issue of whether the Black & Decker defendants were liable as Delta's successors. The district court concluded the Black & Decker defendants were not liable for Mr. Lopez's injuries because (i) they did not supply the table saw; (ii) they did not control Delta, so the court could not pierce the corporate veil and hold them liable; and (iii) they were not liable as Delta's successors, because they did not expressly assume Delta's liability in the PA (the only basis for successor liability that was available under Texas law).

Turning to the Rule 56(d) motion, the district court concluded Mr. Lopez had failed to establish how any specific evidence he sought would create a genuine issue of material fact. It opined he had failed to show that further discovery would yield facts material to Mr. Lopez's opposition to the summary-judgment motion. It would not change the fact that the Black & Decker defendants did not assume Delta's liabilities in the PA, which was already in the record; or that Delta continued to exist as a separate legal entity that retained the liabilities it possessed before the PA was executed. The district court further opined that although Mr. Lopez's stated reasons for an extension met the "good cause" standard under Fed. R. Civ. P. 6(b), his request was moot because he had already filed several briefs in opposition to the summary-judgment motion.

7

## 7.  Rule 59(e) Motion

Mr. Lopez subsequently filed a Rule 59(e) motion to alter or amend the judgment.  He argued it was unfair that the district court had relied on the PA's provisions to enter summary judgment on the successor liability issue.  He pointed out that it was he who submitted the PA to the court—to demonstrate the existence of a factual dispute—not the defendants.  He complained that after he provided the PA to the district court, the Black & Decker defendants did not amend their summary-judgment motion to rely on a contract theory (under the PA) rather than a tort theory under New Mexico's choice-of-law rules.  He further complained that the defendants did not supplement the PA itself with summary-judgment evidence such as a declaration that the PA was a full and complete copy, or a statement from an authorized representative to explain or interpret the PA's provisions.

Mr. Lopez argued the district court should have either denied the defendants' original motion or granted him additional time to obtain discovery concerning the PA.  He contended that there was at least a genuine issue of material fact concerning whether Delta's liabilities were transferred to the Black & Decker defendants under the PA.  Finally, he reiterated his argument that New Mexico or Delaware law applied to the successor liability issue, not Texas law.

## 8.  Rule 59(e) Order

The district court denied the Rule 59 motion.  It reasoned it was entitled to rely on records the parties cited and to consider other documents in the record, including the PA.  It had given Mr. Lopez notice at the hearing that it would use the PA in its

opinion. In addition, Mr. Lopez failed to identify any material to be discovered that would affect the court's ruling.

## DISCUSSION

We review the district court's order granting summary judgment de novo, viewing the evidence in the light most favorable to Mr. Lopez as the non-moving party. *See Schulenberg v. BNSF Ry. Co.*, 911 F.3d 1276, 1285 (10th Cir. 2018). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a)).

We review the remainder of the district court's challenged orders for an abuse of discretion. *See Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) (denial of Rule 59(e) motion); *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017) (ruling on Rule 56(d) motion); *Skrzypczak v. Roman Catholic Diocese of Tulsa*, 611 F.3d 1238, 1242 (10th Cir. 2010) (ruling on Rule 6(b) motion). The district court abuses its discretion when it acts in a way that is "arbitrary, capricious, or whimsical." *Alpenglow*, 894 F.3d at 1203 (internal quotation marks omitted).

### 1. Which State's Law Governs the Successor-Liability Issue?

As noted, the district court determined that Texas law governed whether the Black & Decker defendants were liable as Delta's corporate successors for Mr. Lopez's tort claims. Mr. Lopez argues that either New Mexico or Delaware law, not Texas law, governs this issue.

9

## A. Comparison of State-Law Provisions

New Mexico recognizes the general rule that a successor corporation is not liable for its predecessor's debts. But it has adopted four "traditional" exceptions to that rule: "(1) where there is an agreement to assume those obligations; (2) where the transfer results in a consolidation or merger; (3) where there is a continuation of the transferor corporation; or (4) where the transfer is for the purpose of fraudulently avoiding liability." *Garcia v. Coe Mfg. Co.*, 933 P.2d 243, 247 (N.M. 1997) (internal quotation marks omitted). New Mexico has also adopted a fifth, "product-line" exception, which allows successor liability where "there is a substantial continuity in the *products* resulting from the pretransaction and posttransaction use of the predecessor's assets." *Id.* at 247 (brackets and internal quotation marks omitted).

The PA provides that it "shall be construed and interpreted according to the internal laws of the State of Delaware, excluding any choice of law rules that may direct the application of the laws of another jurisdiction." Aplt. App., Vol. 3 at 479. The district court found that Delaware recognizes the four traditional exceptions to nonliability, but not the product-line exception. *See id.*, Vol. 1 at 203.[3]

Texas, by contrast, appears to recognize only one of the five exceptions: express assumption of liability. *See* Tex. Bus. Orgs. Code § 10.254(b) (Tex. 2007)

---

[3] Mr. Lopez alludes in passing to *Delaware*'s adoption of the "product line" exception, *see* Aplt. Opening Br. at 11, 39; Reply Br. at 21, but he fails to cite any authority to dispute the district court's conclusion that Delaware does *not* recognize this exception, *see, e.g.*, Aplt. Opening Br. at 35 (citing federal-court decisions indicating Delaware has adopted the four traditional exceptions, with no discussion of the product-line exception).

("Except as otherwise expressly provided by another statute, a person acquiring property described by this section may not be held responsible or liable for a liability or obligation of the transferring domestic entity *that is not expressly assumed by the person*." (emphasis added)); *see generally E-Quest Mgmt., LLC v. Shaw*, 433 S.W.3d 18, 23 (Tex. App. 2013) ("Texas strongly embraces a nonliability rule for corporate successors." (internal quotation marks omitted)); *see also Ford, Bacon & Davis, L.L.C. v. Travelers Ins. Co.*, 635 F.3d 734, 735 (5th Cir. 2011) ("Texas law explicitly rejects the product-line successor liability rule . . . .").

## B. Choice-of-Law Analysis

A federal court sitting in diversity looks to the forum state's choice-of-law rules to determine which state's substantive law to apply. *See, e.g.*, *In re ZAGG Inc. S'holder Derivative Action*, 826 F.3d 1222, 1228 (10th Cir. 2016). New Mexico courts follow a two-step process in analyzing choice-of-law issues. First, they characterize "the area of substantive law—e.g., torts, contracts, domestic relations—to which the law of the forum assigns a particular claim or issue." *Terrazas v. Garland & Loman, Inc.*, 142 P.3d 374, 377 (N.M. App. 2006). Next, they apply the New Mexico choice-of-law rule applicable to that category to determine which state's substantive law applies. *See id.* at 377-78 (applying New Mexico's tort-based choice of law rule in tort case).

The district court performed this two-step analysis. It first determined that Mr. Lopez's claims fell within the tort category. It then applied New Mexico's tort-based conflict-of-law rule, *lex loci delicti commissi*, which looks to the place

11

where the wrong occurred. *See id.* at 377. That place is Texas. Mr. Lopez does not seriously dispute this part of the district court's analysis, which requires the merits of his products-liability claims to be determined using Texas law.

But because Mr. Lopez is proceeding against the Black & Decker defendants based on successor liability, it is also necessary to determine which state's law applies to that issue. The district court analyzed the issue at length. It concluded, first, that no New Mexico decision had "explicitly characterize[d] the [successor] nonliability rule or its exceptions as contractual, corporate, or tortious," Aplt. App., Vol. 1 at 214, so it would be necessary to predict how the New Mexico Supreme Court would characterize the issue.

The district court acknowledged that both tort and contract principles had a role to play in resolving the successor-liability issue. This is because "application of the nonliability rule in third-party products liability actions requires an 'assess[ment of] the competing policies which underlie rules of contract and tort liability consistent with products liability analysis . . . .'" *Id.* at 214-15 (quoting *Garcia*, 933 P.2d at 247).

Admittedly, *Garcia* was not a conflicts-of-law case and its discussion of successor liability is useful mostly by analogy. But the district court correctly rejected Mr. Lopez's reading of *Garcia* that *contract* law primarily controls this

12

inquiry in a third-party products liability action.[4]  Instead, in an action like

Mr. Lopez's, "successor liability is less concerned with protecting bargained-for

expectations, because the plaintiff, who has no business relationship with the parties

to the transaction, did not bargain for anything."  *Id.* at 215.  Thus, "liability turns on

the viability of the underlying tort claim and not on principles of contract

enforcement."  *Id.*

We agree with this analysis.  Although Mr. Lopez argues that contract-based

issues predominate in resolving the successor-liability issue in a products liability

case, *Garcia* suggests otherwise.  It was the *tort-based* considerations that caused the

*Garcia* court to be concerned with "protecting an injured person who may be left

without a remedy if the predecessor has dissolved, is defunct, or is otherwise

unavailable to respond in damages."  *Garcia*, 933 P.2d at 247.  As for the

contractually based concerns, they reflect "the policies underlying the contract-based

rule of successor corporation *nonliability*—chiefly, promoting the alienability of

corporate assets."  *Id.* at 248 (emphasis added).  As the district court concluded,

tort-based considerations predominate in this third-party successor-liability case.

The district court acknowledged that another exception to the nonliability rule

on which Mr. Lopez relies—express assumption of liability—depends more heavily

---

[4]     Even if contractual considerations *did* control here, those considerations
would likely favor the application of Delaware law, not New Mexico law.  The
parties to the PA agreed to the application of Delaware law, and Mr. Lopez fails to
show the PA itself has a sufficient connection with New Mexico to require the
application of New Mexico law.

13

on contract-law principles. But this does not mean New Mexico courts would characterize the successor-liability in this third-party tort case as a contractual issue. In conducting their characterization analysis, New Mexico courts assign great weight to the underlying tort-based claim. *See Terrazas*, 142 P.3d at 377-78 (discussing characterization of tort-based suit, and application of *lex loci delicti commissi*, under New Mexico's choice-of-law approach). We conclude that any contractual considerations that affect the defendants' liability here are insufficient to require a contract-based characterization rather than a tort-based characterization.

Mr. Lopez also cites *Billingsley v. JEA Co.*, 836 P.2d 87 (N.M. App. 1992), apparently to show that the New Mexico courts can rely on a law other than the law of the place where an accident occurred to determine an ancillary issue. But applying that case to the facts of this case represents a stretch. In *Billingsley*, a truck driver was injured when he fell at a truck stop in New Mexico. *Id.* at 89. He received Arizona worker's compensation benefits from his employer. *Id.* He then sued the truck stop in New Mexico court, and reached a settlement. *Id.* The worker's compensation carrier sought to attach the settlement proceeds under its statutory lien. *Id.* The New Mexico Court of Appeals held that Arizona law applied to the issue of whether the carrier had a claim against the full amount of the settlement proceeds. *See id.* at 90. In *Billingsley*, unlike this case, liability on the underlying tort claim was already established, and there wasn't any reason to consider how *lex loci delicti commissi* might weigh in the choice-of-law analysis. Here, by contrast, Mr. Lopez's underlying tort claim depends on successor liability.

14

Mr. Lopez also implies that the choice-of-law question involves unresolved factual issues. In New Mexico, the choice-of-law determination is a question of law. *See Terrazas*, 142 P.3d at 377. There is no reason here to depart from that rule. As Mr. Lopez notes, in *Garcia*, the New Mexico Supreme Court identified factual issues that could affect the *merits* of the application of the product-line exception: "whether the successor has the same ability as its predecessor to assess, control, and distribute the risks and costs of injuries caused by a product defect," and "whether under the facts of a particular case this ability is nevertheless outweighed by the policies underlying the contract-law-based rule of successor corporation nonliability." *Garcia*, 933 P.2d at 248. But he fails to show these factual considerations have a similar role to play in evaluating the more broad choice-of-law issue.

Finally, Mr. Lopez argues that New Mexico might refuse to apply Texas law because it offends New Mexico public policy. But he has a heavy burden to show that New Mexico would depart from its choice-of-law principles to apply its own successor-liability law. *See, e.g.*, *Fiser v. Dell Comput. Corp.*, 188 P.3d 1215, 1218 (N.M. 2008) (refusing to enforce parties' contractual choice-of-law provision because it "r[a]n afoul of *fundamental* New Mexico public policy" (emphasis added)); *Reagan v. McGee Drilling Corp.*, 933 P.2d 867, 869 (N.M. App. 1997) ("[C]ourts should invoke this public policy exception only in extremely limited circumstances." (internal quotation marks omitted)). Moreover, as the district court explained, New Mexico's concern to preserve a remedy for its citizens is not present, because Texas law has not entirely stripped Mr. Lopez of a remedy: he has the right to

15

proceed against Delta in an ordinary products liability action. *See* Aplt. App., Vol. 1 at 224.

We conclude the district court properly applied Texas law to determine the successor-liability issue. Under Texas law, a successor corporation is not liable unless it expressly assumed liability for its predecessor's debts. We turn to Mr. Lopez's challenge to the district court's resolution of that issue.

### 2. Express Assumption of Liability

Texas law recognizes an exception to the successor nonliability rule when a successor corporation has expressly assumed its predecessor's liabilities. Application of that exception here turns on whether the PA's terms concerning assumption of liability are ambiguous under Delaware law. If they are unambiguous, their meaning can be determined as a matter of law and resort to extrinsic facts is unnecessary. As the Delaware Supreme Court has explained:

> The proper construction of any contract is purely a question of law, so we review questions of contract interpretation *de novo*. Our objective is to determine the intent of the parties from the language of the contract. This inquiry should focus on the parties' shared expectations at the time they contracted, but because Delaware adheres to an objective theory of contracts, the contract's construction should be that which would be understood by an objective, reasonable third party. If a contract is unambiguous, extrinsic evidence may not be used to interpret the intent of the parties, to vary the terms of the contract, or to create an ambiguity.

*Exelon Generation Acquisitions, LLC v. Deere & Co.*, 176 A.3d 1262, 1266-67 (Del. 2017) (ellipsis, footnotes, and internal quotation marks omitted).

The district court determined that the PA unambiguously provided for a stock acquisition by Black & Decker Corp. of the subsidiaries it purchased, including

16

Delta. This meant that Delta's liabilities remained with Delta, as a subsidiary acquired by Black & Decker Corp. To hold the Black & Decker defendants liable for Delta's liabilities *as a corporate parent*, it would be necessary to pierce the corporate veil. The district court concluded that Mr. Lopez had failed to show facts that justified corporate veil-piercing.[5]

As he argued in the district court, however, Mr. Lopez argues that the PA was structured as an asset acquisition rather than a stock acquisition. He contends this required Black & Decker Corp. (and the Black & Decker defendants) to assume Delta's liabilities. Assuming he demonstrated an ambiguity concerning the type of acquisition provided for in the PA, the district court determined this still did not demonstrate that the Black & Decker defendants expressly assumed Delta's liabilities.

---

[5] Mr. Lopez asserts in conclusory fashion that there are "issues of fact regarding whether the Black & Decker Defendants may have successor liability of its 'Affiliates' on grounds that it controlled and 'caused' them to acquire the liabilities of [Delta]." Aplt. Opening Br. at 11. He argues that Black & Decker Corp.'s "affiliates" are under its control. *See id.* at 24-25. The district court rejected this argument, finding that "[e]ven if [Delta] is Stanley Black & Decker, Inc.'s affiliate . . . thus denoting some measure of control, that does not establish that Stanley Black & Decker Inc. exerts such domination and control over [Delta] that they do not in reality constitute separate and distinct corporate entities but are one and the same corporation" for corporate veil purposes. Aplt. App., Vol. 1 at 234 (internal quotation marks omitted). It further opined that "if simply meeting [the] definition of 'affiliate' [contained in Rule 12b-2 of the Securities Exchange Act of 1934] was sufficient to establish an alter-ego theory, veil-piercing would apply as a matter of course, because all 'affiliates' would meet that definition." *Id.* Mr. Lopez fails to mount an effective appellate challenge to these conclusions.

17

A key provision in the PA involves "transferred liabilities." This provision states that "[t]ransferred liabilities" includes "liabilities and obligations of the Subsidiaries arising out of bodily injury, death or other damage relating to products manufactured prior to the Closing, including all Third Party Claims relating to such bodily injury, death and other damage, whether or not such Third Party Claims are successful." *Id.*, Vol. 3 at 490-91. Mr. Lopez reads the provision as transferring Delta's liabilities for existing products to Black & Decker Corp. But the district court read it differently, "as specifying which liabilities simply transferred over, and remained, with the subsidiaries." *Id.*, Vol. 1 at 238 (internal quotation marks omitted).

The district court relied on the undisputed fact that under the PA's "Transferred Subsidiaries" provision Delta remained fully intact as a distinct legal entity after the transfer. "Thus . . . 'transfer' denotes the movement of wholly-owned subsidiaries from one holding company to another, without any alteration of the subsidiaries' corporate form." *Id.* There was no reason, it opined, to construe the word "transfer" to have one meaning in the "Transferred Subsidiaries" provision, and a different meaning in the "Transferred Liabilities" provision.

The district court further noted that Pentair had agreed to indemnify Black & Decker Corp. for its subsidiaries' liabilities and obligations, "other than 'Transferred Liabilities.'" *Id.* at 239 (quoting definition of "Indemnified Liabilities" in PA ¶ 11.17, Aplt. App., Vol. 3 at 486). This fit its interpretation of the PA, under which the non-indemnified liabilities transferred along with the subsidiaries and

18

remained the obligation of those subsidiaries but were no longer Pentair's responsibility.

Finally, the district court noted the term "Transferred Liabilities" appears only in the "Definitions" section of the PA, and the district court concluded "[i]t is not sound to read a definitional term, to which none of the contract's substantive terms refer, as effectuating an express assumption of liabilities by the acquiring corporation." *Id.* Mr. Lopez fails to show this analysis is erroneous, or that, applying Delaware's objective theory of contracts, there is any ambiguity in the stated provisions that requires further factual development.

Mr. Lopez also cites provisions referring to "Net Asset Values," arguing that these require an accounting of the transferred assets and liabilities of the subsidiaries, including Delta. But he fails to explain how this accounting requirement represents an express agreement to assume Delta's potential responsibility for a prospective tort liability represented by his future product-liability claim.

In sum, because the PA is unambiguous, factual disputes concerning the parties' intent did not preclude the district court's entry of summary judgment on the successor-liability issue.

### 3. *Sua Sponte* **Grant of Summary Judgment/Continuance Issues**

Finally, Mr. Lopez argues the district court erred by granting summary judgment based on the terms of the PA, a ground he contends is different from those the Black & Decker defendants had invoked or requested. He also complains the district court granted summary judgment *sua sponte* on this ground without granting

19

his motion under Fed. R. Civ. P. 56(d) for additional time to conduct discovery or under Fed. R. Civ. P. 6(b) for additional time to respond to summary judgment.

A district court may grant a summary judgment motion "on grounds not raised by a party," but only "[a]fter giving notice and a reasonable time to respond." Fed. R. Civ. P. 56(f)(2). But "[e]ven if such notice is lacking, we will still affirm a grant of summary judgment if the losing party suffered no prejudice from the lack of notice." *Oldham v. O.K. Farms, Inc.*, 871 F.3d 1147, 1150 (10th Cir. 2017) (internal quotation marks omitted).

Mr. Lopez has demonstrated neither lack of notice nor prejudice sufficient to require reversal. In their motion for summary judgment, defendants placed successor liability at issue. Prior to granting summary judgment, the district court held a motion hearing at which the PA was discussed at length. Mr. Lopez also filed supplemental briefs that presented his arguments concerning the PA, including a full copy of the agreement. Concerning his Rule 56(d) motion, the district court determined he had failed to identify with specificity facts that additional discovery would yield that were material to his opposition to summary judgment. We discern no abuse of discretion in the denial of his motions.

### 4. Conclusion

We affirm the challenged orders and the judgment of the district court.

Entered for the Court

Gregory A. Phillips
Circuit Judge

20